REVISED 11-21-2000
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30197
_____


In Re:     In the Matter of the Complaint of Endeavor
           Marine, Inc. and Tako Towing, Inc., as
           Owner and/or owner pro hac vice of the
           vessel M/V Tako Endeavor, her engines,
           tackle, appurtenances, etc., praying for
           Exoneration from or Limitation of Liability:

ENDEAVOR MARINE, INC.; TAKO TOWING, INC.,
as owner and/or owner pro hac vice of the
vessel M/V Tako Endeavor her engines,
tackle, appurtenances, etc., praying for
exoneration from or limitation of liability,

                                  Petitioners-Appellants,

                      versus

CRANE OPERATORS, INC.; ET AL.,

                                  Claimants,

CRANE OPERATORS, INC.,

                                  Claimant-Appellee,

                      versus

KEVIN M. BAYE, SR.,

                                  Claimant-Appellant.
_____

        Appeals from the United States District Court for the
                   Eastern District of Louisiana
_____

                      December 11, 2000

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

This appeal of a summary judgment presents a question of "seaman" status under the Jones Act. Kevin Baye, a crane operator assigned to the derrick barge FRANK L, was injured while attempting to moor the FRANK L to a cargo vessel in the Mississippi River. The district court, finding that Baye's "duties do not take him to sea," denied seaman status to Baye and granted summary judgment for Baye's employer, Crane Operators, Inc. Having reviewed the record, we conclude, as a matter of law, that Baye was a seaman. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

I

On April 4, 1996, Kevin Baye sustained disabling knee and back injuries when he was struck by a mooring line while working aboard the FRANK L. Baye was an employee of Crane Operators, Inc., a company that provides personnel on an as-needed basis to businesses that own or operate cranes and other heavy lift equipment.

The accident occurred in the Mississippi River while the tug boat TAKO ENDEAVOR was pushing the FRANK L alongside a cargo vessel that the Frank L was assigned to unload. Baye was standing near the head of the FRANK L with a deck hand waiting for the barge to be positioned alongside the cargo vessel so he could pass a mooring

line to the deck hands aboard the cargo vessel.  While being pushed into position by the TAKO ENDEAVOR, the stern mooring cable of a nearby derrick barge, the AGNESS, snagged on the FRANK L's hull. The line snapped and popped up onto the deck of the FRANK L striking Baye in the leg.

After receiving benefits under the Longshore and Harbor Workers' Compensation Act, Baye sought recovery under the Jones Act.  On November 10, 1996, he filed suit in the Civil District Court of Orleans Parish against Crane Operators, Ryan-Walsh, Inc., the owner of the FRANK L, and Tako Towing, Inc ("Tako") and Endeavor Marine ("Endeavor") the owners of the TAKO ENDEAVOR.  On March 11, 1998, Tako and Endeavor filed a petition for limitation of liability in federal court.  See 46 U.S.C. § 183 (West 1999).[1] Pursuant to the Limitation of Liability Act, the district court stayed the state court proceeding.  See id.  In addition to Baye, Crane Operators and Ryan-Walsh filed claims in the limitation proceeding against Tako and Endeavor.  Tako and Endeavor then filed a counterclaim against Crane Operators for contribution and

_____

[1]46 U.S.C. § 183(a) provides in relevant part:

(a)  The liability of the owner of a vessel, whether American or foreign, . . . shall not, except in the cases provided for in subsection (b) of this section exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. § 183(a) (West 1999).

3

indemnification.  Crane Operators responded by moving for summary judgment in the limitation action arguing that there could be no Jones Act liability because Baye was not a "seaman."

On February 12, 1999, the district court granted summary judgment for Crane Operators concluding that "Kevin Baye is not a Jones Act seaman because his duties do not take him to sea."  In reaching this conclusion, the district court recognized that the crucial issue in this case was whether Baye had satisfied the second prong of Chandris--that is, whether Baye's connection to the FRANK L in navigation was substantial in terms of both its duration and its nature.  See Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995).  The court stated that it was conceded by the defendants that the FRANK L was a "vessel in navigation" and that the requirement that Baye's connection to the FRANK L be substantial in duration was met.  However, the district court--faced with a plaintiff whose primary duties aboard the vessel were in the nature of longshore work--concluded that Baye's connection to the FRANK L was not substantial in terms of its nature because his duties did not carry him to sea.

In reaching the conclusion that the nature of Baye's duties was insufficient to convey "seaman" status upon him, the district court seems to have relied upon the following statement of the

Supreme Court in <u>Harbor Tug and Barge Co. v. Papai</u>, 520 U.S. 548

(1997):

> For the substantial connection requirement to serve its
> purpose, the inquiry into the nature of the employee's
> connection to the vessel must concentrate on whether the
> employee's duties take him to sea.

<u>Id.</u> at 555.  The district court thus understandably surmised that

the "linchpin" of the substantial connection test is whether the

claimant's duties carry him to sea.  After reviewing the summary

judgment evidence, the court concluded that because Baye's duties

do not literally carry him to sea, he could "not satisfy the second

prong of the <u>Chandris</u> test."  Baye, Tako, and Endeavor each filed

timely notices of appeal from the district court's judgment.[2]

II

A

---

[2]The appellants argue that it was improper for the district
court to consider Baye's status as a "seaman" because such a
determination is immaterial to whether Tako and Endeavor are
entitled to limit their liability under 46 U.S.C. § 183.  This
assertion, however, is contrary to clearly established law.  In
<u>British Transport Comm'n v. United States</u>, 354 U.S. 129, 138
(1957), the Supreme Court held that the district court may resolve
all cross-claims that arise out of the limitation proceeding.  <u>See</u>
<u>British Transport</u>, 354 U.S. at 138-39.  Further, in <u>Odeco Oil & Gas</u>
<u>Co. v. Bonnette</u>, 74 F.3d 671 (5th Cir. 1996), this court held that
parties seeking contribution and indemnity by way of cross-claims
are claimants for purposes of the Limitation Act.  <u>Id.</u> at 675.
Consequently, contrary to the appellants' assertions, the district
court had the authority to determine Baye's status as a Jones Act
"seaman."

5

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. See Starkman v. Evans, 198 F.3d 173, 174 (5th Cir. 1999)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Because the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the jury. Harbor Tug, 520 U.S. at 554. "Nevertheless, 'summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion.'" Id. (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)).

B

As the courts have often lamented, the term "seaman" is not defined in the Jones Act. Thus, the difficult--perhaps insurmountable--task of giving a cogent meaning to this term has been left to the courts. In Chandris, the Supreme Court significantly helped by delineating a two-prong test to determine whether an employee is a "seaman":

> First, . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. . . .

> Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

6

<u>Chandris</u>, 515 U.S. at 368, 115 S.Ct. 2172. To satisfy the first prong of the <u>Chandris</u> test, the claimant need only show that he/she "do[es] the ship's work." <u>Id.</u> As the Court observed, this threshold requirement is "very broad." <u>Id.</u>

The second prong of the <u>Chandris</u> test is intended "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." <u>Id.</u> As the Court explained,

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon. The duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

<u>Chandris</u>, 515 U.S. at 370 (citations omitted).

Even though the nature of the worker's activities is a factor in determining his substantial connection to the vessel, the <u>Chandris</u> Court emphasized that there is "a status-based standard" for determining Jones Act coverage. <u>Chandris</u>, 515 U.S. at 358. In other words, "it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel." <u>Id.</u> at 364. Thus, even a ship repairman (which is traditional longshoreman work and is one of the enumerated

7

occupations under the LHWCA) may qualify for seaman status if he has the requisite employment-related connection to the vessel. Id. at 363-64 (citing Southwest Marine, Inc. v. Gizoni, 502 U.S. 81 (1991)).

The Court revisited Chandris in Harbor Tug in 1997. The Harbor Tug Court explained that the inquiry into the worker's employment-related connection to the vessel

> must concentrate on *whether the employee's duties take him to sea*. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

Harbor Tug, 520 U.S. at 555 (emphasis added). The meaning of the "going to sea" test will be discussed below.

C

(1)

Turning to the facts of this case, it is undisputed that Baye's duties contribute to the function and the mission of the FRANK L. Thus, the first prong of the Chandris test is satisfied. With respect to the second prong of Chandris, as previously noted, it is undisputed that the FRANK L qualifies as a "vessel in navigation." Further, as noted by the district court, Baye's connection to the FRANK L was substantial in duration given that he spent almost all of his time working on the vessel in the eighteen months prior to his accident. Thus, the sole question before this

court, as well as the sole question presented below, is whether Baye has an "employment-related connection" to the FRANK L that is "substantial in terms of . . . its nature." Chandris, 515 U.S. at 368-69.

(2)

In concluding that Baye is not a seaman, the district court relied exclusively on the "going to sea" test articulated in Harbor Tug. The court found that Baye's connection to the FRANK L was not substantial in nature because "it did not take him to sea. His work brought him aboard the barge only after the vessel was moored or in the process of mooring." This application of the "going to sea" test has an intuitive appeal, but we do not believe that the Supreme Court intended to create such a singular rule for determining seaman status.

First, the Harbor Tug Court stated that the determination of whether the claimant went to sea was only "helpful" in determining whether he has the requisite connection to the vessel.

Second, when read in context, the "going to sea" passage in Harbor Tug is a shorthand way of saying that the employee's connection to the vessel regularly exposes him "'to the perils of the sea.'" Harbor Tug, 520 U.S at 554-55 (quoting Chandris, 515 U.S. at 368). In other words, we do not think that the Harbor Tug Court intended to articulate a new and specific test for seaman

9

status.  As we read <u>Harbor Tug</u>, the Court merely restated the point it had made in <u>Chandris</u>, when it explained that

> [we] eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves.  The principal formulations employed by the Courts of Appeals-- "more or less permanent assignment" or "connection to a vessel that is substantial in terms of its duration and nature"--are simply different ways of getting at the same basic point:  The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." <u>Sieracki</u>, 328 U.S., at 104, 66 S.Ct., at 882 (Stone, C.J., dissenting).

<u>Chandris</u>, 515 U.S. at 369-70.

For these reasons, the district court incorrectly concluded that Baye is not a Jones Act seaman merely because his duties do not literally carry him to sea.[3]

(3)

After examining the record evidence and considering Baye's entire "employment-related connection" to the FRANK L, we must conclude that Kevin Baye's connection to the FRANK L is substantial in nature and that Baye is a Jones Act seaman as a matter of law. First, Baye was permanently assigned to the FRANK L and, as mentioned above, had spent almost all of the prior eighteen months on the vessel.  Second, Baye's primary responsibility was to

---

[3]Baye's duties do place him on the brown waters of the Mississippi River.

10

operate the cranes on board a vessel whose sole purpose is to load and unload cargo vessels.[4] Third, in the course of his employment, Baye was regularly exposed to the perils of the sea. For these reasons, we conclude that Baye was a Jones Act seaman as a matter of law.

III

For the reasons stated above, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED
for further proceedings.

---

[4]Baye may have performed additional duties in service of the FRANK L. In his affidavit, Baye states that he not only operated the crane but also regularly changed cables, changed engine parts, performed repair welding for different parts of the barge, rebuilt aircans for the brakes and frictions, adjusted brakes and frictions, changed air lines, moored and released the barge on a daily basis, operated deck winches, moved and secured the barge up and down the side of ships, and cleaned areas of the barge. Baye's evidence regarding the nature of his additional duties while in the service of the FRANK L is contradicted by the affidavits of William Kirksey, Jr., the operations manager of Ryan-Walsh; and Paul J. Delatte, Sr., the superintendent for Crane Operators. Kirksey and Delatte suggest that Baye's duties while aboard the FRANK L were limited to operating her crane. Resolution of any dispute of these additional duties is not determinative of Baye's status as a seaman because his duties as a crane operator satisfy the requirements of the Chandris test.

11