799 So.2d 462 (2001)
Jimmy Shay RICHARD
v.
MIKE HOOKS, INC.
No. 2001-C-0145.
Supreme Court of Louisiana.
October 16, 2001.
Rehearing Denied December 14, 2001.
*463 James B. Doyle, Woodley, Williams, Boudreau, Norman, Brown & Doyle, Lake Charles, Counsel for Applicant.
J. Steven Broussard, James J. Cox, Broussard & Hart, Lake Charles, Counsel for Respondent.
Timothy F. Burr, Alina Pagani, New Orleans, Counsel for Cooper T. Smith, Stevedoring Company, Inc. (Amicus Curiae).
CALOGERO, Chief Justice.[*]
We granted this writ to determine if a tacker/welder's helper, who was injured while working for defendant, Mike Hooks, Inc., is a sea-based maritime employee entitled to Jones Act protection or a landbased worker who happens to spend a portion of his time working on Hooks's vessels. After reviewing the record, we *464 find the latter to be correct, and hold that plaintiff does not qualify as a seaman for purposes of the Jones Act, 46 U.S.C. § 688.

FACTS AND PROCEDURAL HISTORY
Mike Hooks, Inc. is in the dredging business. Jimmy Shay Richard began his employment with Hooks on August 18, 1992, working as a tacker/welder's helper in a dockside yard that was primarily used to repair the vessels and equipment used in Hooks's dredging operations. Richard did not work exclusively on any one project, but performed whatever work had to be done in defendant's yard. Richard's duties included picking up scrap iron, unhooking pipe, loading barges, and fabricating items to be used on the vessels. In addition, Richard spent in excess of thirty percent of his time performing direct repair and maintenance to Hooks's vessels including changing out decks, replacing pipes, changing out cables, replacing mufflers and, occasionally, repairing engines.
The vessels that Richard worked aboard were dockside, he was never more than a gangplank's distance from shore while working, and some of the vessels being repaired were partially on land. Richard was not hired as part of the dredging crew that performed repairs on vessels during the dredging operations. He did not eat or sleep on defendant's vessels, nor did he keep watch over them. Richard never worked aboard any dredge during its primary operations, nor did he work on any dredge being moved over navigable water in pursuit of its mission. Richard's only time spent on a moving vessel was once every month or so when he was required to ride in a small boat to assist in moving dredge pipe along a canal adjacent to Hooks's yard. This latter assignment lasted, on average, about forty-five minutes to two hours in duration.
On March 29, 1994, Richard was working on land, off-loading pipe from a truck, when the boom of a loading crane collapsed and fell on his right arm, causing it to be amputated. Richard filed a lawsuit against Hooks in the 14th Judicial District Court seeking recovery under the Jones Act.[1] The defendants then filed notice of removal to the U.S. District Court for the Western District of Louisiana, which thereafter remanded the case back to the state court. After remand, Hooks moved for summary judgment contending that Richard was not a seaman. The trial court denied Hooks's motion, holding that a reasonable jury could conclude that Richard was a seaman.
The case was then bifurcated, with the issue of seaman status being tried first. The trial court held that Richard was a seaman, and certified that judgment as a final one pursuant to Louisiana Code of Civil Procedure Article 1915(B)(1). Hooks appealed and the court of appeal affirmed the trial court's decision that Richard was a seaman, thus entitled to Jones Act benefits.
We disagree. The facts surrounding Richard's employment with Hooks do not warrant a finding that plaintiff was a Jones Act seaman.

LAW AND DISCUSSION
This Court's opinion in Wisner v. Professional Divers of New Orleans, 98-1755 (La.3/2/99), 731 So.2d 200, chronicled some of the historical developments in the law concerning seamen and the Jones Act. While it is not necessary to rehash the history discussed in that case, it is important to discuss the recent United States Supreme Court cases that have addressed *465 the issue of who qualifies as a seaman under the Jones Act, 46 U.S.C. § 688.
The United States Supreme Court in Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), set forth the elements for seaman status as follows: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; (2) a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. See Chandris, 515 U.S. at 368, 115 S.Ct. at 2190.
The Chandris court explained that the first element was intended to exclude from Jones Act protection those individuals who do not perform the ship's work. The court recognized, however, that the threshold requirement is very broad, stating that "all who work at sea in the service of a ship" are eligible for seaman status. See id.
The second element, however, is a more narrow inquiry. The Chandris court explained the element as follows:
The fundamental purpose of the substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)).
Chandris, 515 U.S. at 368-69, 115 S.Ct. at 2190.
The Chandris court then provided guidance in ascertaining who is a "member of the crew" and, therefore, a seaman. The court held:
"[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." Wallace v. Oceaneering Int'l, 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.
* * *
A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally landbased and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure.
* * *
A worker who spends less then about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to *466 it." Wilander, 498 U.S., at 356, 111 S.Ct., at 818.
Chandris, 515 U.S. at 370-71, 115 S.Ct. at 2190-91.
In 1997, the United States Supreme Court in Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), further clarified the rule by stating:
For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.
Harbor Tug, 520 U.S. at 555, 117 S.Ct. at 1540.
We begin with the first element of the Chandris test, that an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. The court of appeal held that this element was met, and with this we agree. Richard did perform maintenance and repair work on defendant's vessels that contributed to their function.
We recognize, however, as did the Chandris and Harbor Tug courts, that the first element of the test is general and that the inquiry of whether an individual is a seaman will often turn on the second element of the Chandris test. That element requires the employee to show "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." See Chandris, 515 U.S. at 368, 115 S.Ct. at 2190.
Regarding the latter element, the court of appeal found that Richard did have a connection to Hooks's vessels that was substantial in duration and nature because, in considering the totality of the circumstances, Richard's work was of a seagoing nature that exposed him to the perils of the sea. The court noted that Richard spent over thirty percent of his time aboard defendant's vessels, that his work contributed to the function of the vessels, and that he was exposed to the perils of the sea in performing those duties. The court referred to the testimony of a marine expert who stated that Richard faced the "perils of the sea" such as "hazards of cargo operations, ship's cranes/booms, slippery decks, sinking vessel, fire hazards, etc."
We agree that Richard had a connection to defendant's vessels, but disagree that the connection was substantial in duration and nature. The fact that Richard spent in excess of thirty percent of his time working on defendant's vessels does not, in and of itself, make him a seaman. Thirty percent is not a magic number automatically rendering an individual's connection with a vessel substantial in duration and nature. Thirty percent is simply a guideline, a minimum below which an individual generally does not qualify as a seaman. Furthermore, the fact that Richard may have been exposed to some perils does not automatically qualify him as a seaman. "Seaman status is not co-extensive with seamen's risks." Chandris, 515 U.S. at 361, 115 S.Ct. at 2186.
Richard's time spent aboard Hooks's vessels and the perils he faced must be considered along with other important facts to determine whether his connection with defendant's vessels are substantial in nature and duration. In this particular instance, we consider an analysis *467 of the following: all of the vessels on which plaintiff worked were dockside; he was never more than a gangplank's distance from shore when working on the vessels; some of the vessels were partially on land while being repaired; he never slept on the vessels; he did not eat on the vessels; he did not keep watch on vessels overnight; he was not a member of Hooks's dredge crew that performed welding on dredges in operation; he never worked on a vessel while it was performing its primary mission; he took his orders from a land-based foreman; he was only aboard small moving vessels once every month, for short durations, where he assisted in moving dredge pipe along a canal adjacent to Hooks's yard; and his repair duties did not take him to sea.[2] While none of these individual facts alone prohibit an employee from attaining seaman status, a consideration of them together shows that Richard was a land-based employee, not a seaman.
Richard has argued that the facts surrounding his employment should not prevent him from attaining seaman status because similar facts were present in four post-Chandris cases. Richard cites Manuel v. P.A.W. Drilling & Well Service, Inc., 135 F.3d 344 (5th Cir.1998); Burgess v. C.F. Bean Corp., 98-3072 (La.App. 4 Cir. 8/18/99), 743 So.2d 251; Gumpert v. Pittman Construction Co., Inc., 98-2269, 99-0709 (La.App. 4 Cir. 6/9/99), 736 So.2d 1026; and In re Endeavor Marine Inc., 234 F.3d (5th Cir.2000).
While some of the facts in Manuel, Burgess, Gumpert, and In re Endeavor Marine, Inc. may be similar to some facts in this case, the totality of the circumstances are distinguishable. The determination of seaman status is inherently fact intensive, and each case must be decided under the facts presented therein. See Chandris, 515 U.S. at 371, 115 S.Ct. at 2191; Wilander, 498 U.S., at 356, 111 S.Ct., at 818. While the courts which decided Manuel, Burgess, Gumpert, and In re Endeavor Marine Inc. found the plaintiffs therein to be seamen, the facts surrounding Richard's employment, in our view, do not yield the same result.
The totality of the circumstances surrounding Richard's employment does not provide him with a connection to defendant's vessels that is substantial in nature and duration. The facts indicate that Richard is a land-based employee who happens to spend some of his time working aboard defendant's vessels. Jimmy Shay Richard is not a Jones Act seaman.
For the foregoing reasons, we reverse the finding by the trial court and court of appeal that plaintiff is a seaman entitled to Jones Act benefits, and dismiss this claim with prejudice.
*468 REVERSED; The Jones Act claim is dismissed with prejudice.[3]
JOHNSON, J., concurs in result.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] In supplemental petitions, Richard added an intentional tort claim against Hooks and sued the crane manufacturer, Bucyrus-Erie Company and its insurer.
[2] Richard's limited time spent aboard small boats in a waterway adjacent to Hooks's yard, in our view, does not constitute "going to sea." Whether an employee's duties take him to sea was an inquiry enunciated in Harbor Tug, supra. We note that the Federal Fifth Circuit Court of Appeals, in In re Endeavor Marine, Inc., 234 F.3d 287 (5th Cir.2000), recently determined that the "going to sea" reference in Harbor Tug is only helpful in determining whether an individual has the requisite connection to a vessel, that the phrase is not "a new and specific test for seaman status," but simply a shorthand way of saying that "the employee's connection to the vessel regularly exposes him to the perils of the sea." Id. at 291. We agree that the Harbor Tug court did not intend to make a hard and fast rule that those individuals who do not "go to sea" can never be classified as seamen. But, whether an individual routinely goes to sea is a factor in determining whether he has a connection to a vessel that is substantial in nature and duration.
[3] We are satisfied that reversal without a remand is the proper disposition in this matter, given the agreement between the parties as set out in their Joint Stipulation and Motion to Designate Interlocutory Ruling as a Final Judgment. That agreement states as follows:

With this stipulation, there is no just reason for delay; the only remaining issue, in the event Richard is determined to be a seaman, is the amount of damages, if any, to be awarded; if Judge Palmer's ruling of May 26, 1998 is reversed, then the entire suit will be dismissed; and therefore, judicial economy and efficiency is best served by the application of the provisions of La. C.C.P. Art. 1915(B)(1).
Rec., vol. 5, p. 1024 (emphasis supplied).
While the plaintiff agreed to a fast-track review of the district court's ruling on his status as a seaman, albeit with the understanding that dismissal of the suit would be the consequence of reversal on appeal of the district court's ruling, the parties also "reserve[d] their right to contest whether damages are due to Jimmy Shay Richard as a result of the accident sued upon herein, ... under ... any ... plan of Workers' Compensation which might be applicable, and if so, with respect to the amount of such damages." Rec., vol. 5, p. 1024.
While we hold that Richard is not entitled to relief under the Jones Act, we make no comment on whether or not the plaintiff is entitled to benefits under any other state or federal worker's compensation law, or the manner in which he may pursue such benefits. Under the circumstances, we believe it to be appropriate simply to reverse the district court's judgment, thereby deciding the only issue before us in this appeal. We do not intend our dismissal of plaintiff's Jones Act claim to preclude him from seeking any other relief to which he may be entitled.