**Opinion issued August 20, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-11-00849-CV**

————————————

**JEFF HARTLEY, Appellant**

**V.**

**WILLIAMS SOUTHERN COMPANY, L.L.C., Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 0968223**

---

**MEMORANDUM OPINION**

Appellant Jeff Hartley was injured while performing maintenance work on a blowout preventer on an oil well. Hartley sued his employer, Williams Southern Company, L.L.C., under the Jones Act, 46 U.S.C. § 30104, arguing that he was a

seaman because the workover rig he worked on was located in an intercoastal waterway when he was injured. The employer successfully challenged Hartley's seaman status in a motion for summary judgment, and the case was dismissed. Because the evidence Hartley presented concerning his six days of employment does not demonstrate a substantial connection to a vessel in navigation, as the Jones Act requires for seaman status, we affirm.

## Background

Williams Southern hired Hartley on August 26, 2009 as an oil-rig floorman. Hartley's duties included assembling, cleaning, and disassembling blowout preventers and piping on rigs.

Although 90% of its business involved land-based drilling operations, Williams Southern had contracted to service the Hilcorp Company's oil wells, which were located in a marsh. Williams Southern assigned Hartley to one of three work crews which operated on two workover rigs, RIG 402 and RIG 403. Barges pushed by tug boats towed Williams Southern's rigs to wells located in the intercoastal waterway near Lafitte, Louisiana. Once in position, the barges were submerged to rest on the ground beneath the marsh. Then the rig was positioned over the wellhead and the workers performed maintenance and upgrades on the well and drilling equipment, using the barge as a platform.

Hartley worked on RIG 402 and RIG 403 for the six days that he was employed by Williams Southern. The rig workers used a crew boat to travel between the rigs and the shore, where they would sleep at night. The boat ride to the rigs took five to ten minutes, as the rigs were located approximately one hundred feet from the shore.

At the time of his injury, Hartley was performing maintenance work on a blowout preventer. He was standing on a wooden board over a keyway, which was a slot in the rig through which equipment could be passed, knocking hydraulic hoses off of the blowout preventer. The board beneath Hartley broke, and he fell, injuring his neck, knee, and back. Afterwards, Hartley took himself to the emergency room. The next day, he reported a workers' compensation claim to a Williams Southern manager. Hartley never returned to the rigs for work.

Hartley brought suit against Williams Southern and Hilcorp under the Jones Act. Williams Southern moved for traditional and no-evidence summary judgment, arguing among other things that Hartley was not a Jones Act seaman. After Hartley filed a response, the trial court held a hearing and granted both the traditional and no-evidence summary-judgment motions in favor of Williams Southern. Hartley then timely filed this appeal from the judgment.

**Analysis**

The Jones Act provides a cause of action for maritime workers injured by an employer's negligence. *See* 46 U.S.C. §§ 30104–30105 (formerly 46 U.S.C. § 688). When hearing a case under the Jones Act, the state court applies substantive federal maritime law but follows state procedure. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When we review a traditional motion for summary judgment, we review the summary-judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In order to prevail on the traditional motion for summary judgment, Williams Southern was required to show that there was no genuine issue of material fact regarding Hartley's seaman status. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–58 (Tex. 2007).

When reasonable minds can differ as to a plaintiff's seaman status, the issue is for the jury. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S. Ct. 2172, 2190 (1995). But because interpretation of the statutory term "seaman" is a question of law for the court, "summary judgment or a directed verdict is mandated where the facts and law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S. Ct. 807, 818 (1991) (quoted in *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540 (1997)). Thus, if undisputed facts reveal that a maritime worker has an inadequate connection to a vessel or fleet of vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict. *Chandris*, 515 U.S. at 371, 115 S. Ct. 2172. The plaintiff bears the burden of proof in establishing that he qualifies as a seaman. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003).

Although the Jones Act does not define the term "seaman," the Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S. Ct. 2172 (1995), adopted a two-part test for determining who may assert the cause of action. First, an employee's duties must contribute to the function of the vessel or the accomplishment of its mission. *Id.* at 368, 115 S. Ct. at 2190. This first requirement is "very broad," and "all who work at sea in service of a ship" can qualify. *Id.* Second, a seaman must have a connection to a vessel or identifiable

5

group of vessels in navigation "that is substantial in terms of both its duration and its nature." *Id.*

Both elements of the *Chandris* test are required to establish seaman status. Our analysis will focus on the second, more stringent requirement of a substantial connection to a vessel in navigation. This requirement is meant "to distinguish sea-based workers whose employment regularly exposes them to the 'perils of the sea,' from primarily land-based workers who have only sporadic or tangential connections to navigation." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999) (citing *Harbor Tug*, 520 U.S. at 555, 117 S. Ct. 1535). Although seaman status is not always coextensive with seaman's risks, *Chandris*, 515 U.S. at 361, 115 S. Ct. 2172, the substantial-connection requirement ensures that the Jones Act remedy is reserved only for those employees whose work "regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Id.* at 370, 115 S. Ct. 2172 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104, 66 S. Ct. 872, 882 (1946)).

In determining whether a plaintiff has a substantial connection to a vessel in navigation, a court must weigh the total circumstances of an individual's employment, considering both the nature of the worker's activities and the duration of the connection to a vessel. *Id.* at 370, 115 S. Ct. 2172. Both the nature and duration of the worker's connection to a vessel must be substantial. *Harbor Tug*,

6

520 U.S. at 554, 117 S. Ct. 1535; *Chandris*, 515 U.S. at 368, 115 S. Ct. 2172. The inquiry into the nature of the worker's connection to the vessel concentrates on whether his duties take him to sea. *Harbor Tug*, 520 U.S. at 555, 117 S. Ct. 1535. In making the substantial-connection determination, courts should not look at only a snapshot of the worker's employment situation at or around the time of injury. *Chandris*, 515 U.S. at 363, 115 S. Ct. 2172.

## I.     Nature of activities

The nature of the maritime worker's duties must "take him to sea," which is shorthand for saying the worker's connection to the vessel should regularly expose him to the perils of the sea. *In re Endeavor Marine Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) (citing *Harbor Tug*, 520 U.S. at 554–55, 117 S. Ct. 1535); *see also Chandris*, 515 U.S. at 369–70, 115 S. Ct. 2172. The connection to the vessel through the worker's duties must be regularly sea-based, not land-based. *See Becker*, 335 F.3d at 388. A worker who practices "an art developed in land work and transposed to a maritime setting" cannot show seaman status without a further showing of regular exposure to the perils of the sea and a substantial temporal connection to a vessel. *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 378 (5th Cir. 2001) (requiring plugging-and-abandoning offshore oil platform crewman to show substantial temporal connection). Seaman status is determined by the entire employment-related connection to the vessel, not by the immediate circumstances

7

of the plaintiff's injury. *Hufnagel*, 182 F.3d at 346. *Compare Becker*, 335 F.3d at 391 (although injured while exposed to the risks of working at sea, worker only temporarily assigned to ship was not a seaman), *with Endeavor Marine*, 234 F.3d at 292 (holding that employee whose duties regularly exposed him to the perils of the sea, although not at sea at the time of injury, was a Jones Act seaman).

Generally, workers whose regular duties involve very little work of a sea-going nature do not qualify as Jones Act seamen. *See, e.g.*, *Hufnagel*, 182 F.3d at 347 (holding oil rig worker who ate, slept, spent time, and performed minor duties aboard a ship transporting him to platform had only a transitory connection to a vessel). In *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 117 S. Ct. 1535 (1997), the Supreme Court of the United States held that a dockside-based worker whose duties mostly included maintenance, deckhand, and painting work did not qualify as a Jones Act seaman. *See* 520 U.S. at 559–60, 117 S. Ct. 1535. After performing these duties, the worker would not accompany the vessels when they sailed to sea, demonstrating no more than a "transitory or sporadic" connection to the vessels. *Id.* Because the only substantial connection the worker had to an identifiable vessel or group of vessels that a reasonable juror could identify would be the dockside union hiring hall from which he was hired, the worker had failed to present a question of material fact of whether he was seaman. *Id.* at 560, 117 S. Ct. 1535.

8

In *Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003), the Fifth Circuit held that a summer engineering intern did not qualify as a seaman because his duties "comprised land-based work almost exclusively." 335 F.3d at 390–91. The evidence regarding the intern's future assignment was that he was scheduled to engage primarily in land-based activities, and his chance to go out "on a boat" was an isolated, small part of his internship program. *See id.* at 390. His only connection to a vessel was performing seaman's work during a single mission on a vessel to which he was only temporarily assigned. *See id.* at 391. Although he was clearly exposed to the perils of the sea when the movement of a ship's connection hose severed his legs, the intern failed to establish a continuous connection to a vessel as required to raise the issue of his seaman's status. *See id.* Accordingly, the *Becker* Court held that the intern was not a seaman as a matter of law and vacated jury findings based on Jones Act liability. *Id.* at 394.

The nature of Hartley's connection to a vessel is similar to that of the workers in *Harbor Tug* and *Becker*. Hartley's work on RIG 402 and 403 was that of an oil well maintenance worker, a floorman—a job often performed on land as well as on water. His work was not that of one of the traditional maritime trades. *See, e.g.*, *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 436 (5th Cir. 1984) (holding plaintiff was a seaman because, as a diver, he performed a traditional maritime task and faced inherently maritime perils). His duties aboard the rigs were unrelated to

9

the navigation, maintenance, or voyage of the vessel; instead, his purpose aboard the rigs was to perform work on the oil wells. *See Hufnagel*, 182 F.3d at 347 (noting purpose of worker's role aboard the vessel was to perform work on oil platform in determining he was not a seaman as a matter of law). By Hartley's own admission, he had never worked in the industry at sea or on water before his work on Williams Southern's rigs.

Hartley's duties aboard the barges did not regularly expose him to the perils of the sea or the special hazards of those who go to sea. Those special hazards include "the need to fight fires without outside assistance, the need to abandon ship, the need to survive exposure to inclement weather until help arrives, potential delay or inconvenience in being transported offsite to receive medical attention, and being stuck on a vessel under the control of its Master and operator for extended periods of time until the next port call." *Duet v. Am. Commercial Lines LLC*, No. 12-3025, 2013 WL 1682988, at *5 (E.D. La. Apr. 17, 2013) (citing *Lara v. Arctic King Ltd.*, 178 F. Supp. 2d 1178, 1182 (W.D. Wash. 2001)). Hartley and the other rig workers slept on shore. They commuted every day from the shore to the rigs on a crew boat—a journey that only took them five to ten minutes to complete. He was able to drive himself to a hospital on land after being injured on board the rig without his manager's knowledge that he was injured. Although Hartley was injured aboard the barge when performing maintenance work on the

10

well's blowout preventer, injury aboard a vessel in navigation is not sufficient to demonstrate seaman status. *See, e.g.*, *Chandris*, 515 U.S. at 361, 115 S. Ct. 2172; *Becker*, 335 F.3d at 393; *Hufnagel*, 182 F.3d at 347.

In sum, Hartley's duties as a floorman, a job he normally performed on land-based oil wells, working aboard a maintenance rig located 100 feet from shore, did not expose him to the perils of the sea. Even if Hartley performed his work aboard a vessel in navigation, his duties did not require him to travel to sea and he returned to shore after his work on the vessel was complete. *See Harbor Tug*, 520 U.S. at 559–60, 117 S. Ct. 1535. Accordingly, no reasonable juror could consider Hartley to have had a substantial connection to a vessel in navigation in terms of the nature of his duties.

## II.    Duration of connection to vessel

In evaluating seaman status, courts are not to employ a "snapshot" test by inspecting only the situation at the moment of the alleged injury; instead, courts must look for an "enduring relationship" with a vessel. *Chandris*, 515 U.S. at 363, 115 S. Ct. 2172. Transitory or sporadic assignments to work aboard a vessel for a brief time do not meet the substantial temporal connection requirement. *See id.* at 368–69; *see also Hufnagel*, 182 F.3d at 347 (holding platform worker who first boarded the vessel on which he was injured seven days before and could not expect to ever board vessel again lacked substantial connection to it). As a rule of thumb

11

for determining whether a worker demonstrated a substantial connection with a vessel in navigation, the Fifth Circuit uses a "30 percent rule": Ordinarily, a worker who shows that 30 percent or more of his time at work is spent in service of vessels in navigation under the common ownership or control of his employer is entitled to present the issue of his seaman status to the jury. *Becker*, 335 F.3d at 388–89; *see also Chandris*, 515 U.S. at 371, 115 S. Ct. 2172 (approving of the Fifth Circuit's 30 percent rule).

The exception to the requirement to demonstrate a substantial temporal connection to a vessel or identifiable group of vessels is when the worker receives a new assignment in which his essential duties change. *Becker*, 335 F.3d at 389 (citing *Chandris*, 515 U.S. at 372, 115 S. Ct. 2172). If the reassignment is to a ship to perform the duties of a seaman, then he can qualify for seaman status when injured shortly after reassignment, even if that is well before meeting the 30 percent threshold. *Id.* Conversely, if the reassignment is to a land-based job, he may not qualify for seaman status based on his prior work as a seaman. *Id.* The mere possibility that a worker may be reassigned to a land-based position in the future, however, does not demonstrate that a worker has lost his prior seaman status. *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 352 (5th Cir. 1998) (holding worker whose basic assignment never changed over course of the

two months of his employment aboard vessels in navigation was a seaman as a matter of law).

Hartley claims that he demonstrated a substantial connection to the Williams Southern rigs because he worked on those rigs for the entirety of his six-day employment. This, he argues, exceeds the Fifth Circuit's 30 percent benchmark, entitling him to present the question of his seaman status to a jury. But in *Chandris*, 515 U.S. at 363, 115 S. Ct. 2172, the Supreme Court warned against using a "snapshot" test for seaman status by examining the employment situation only at the time of injury to determine seaman status. In any case, the 30 percent rule serves as no more than a guideline, and departure from it is justified in appropriate cases. *Roberts*, 266 F.3d at 377. Given Hartley's brief six days of employment history, Hartley's is not the ordinary case warranting use of the 30 percent benchmark.

When a worker does not have a substantial connection to a vessel in navigation in terms of the nature of his work, "he cannot claim seaman status simply because he was injured early in his tenure." *Teaver v. Seatrax of La., Inc.*, 434 Fed. App'x 307, 311 (5th Cir. 2011); *see also Hufnagel*, 182 F.3d at 345, 347 (holding oil platform worker did not demonstrate substantial connection when he was injured aboard ship which he had been aboard for only seven days); *Brown v. Trinity Catering, Inc.*, No. 06-57561, 2007 WL 4365384, at *4, *6 (E.D. La. Dec.

13

11, 2007) (holding that worker had not presented evidence that he qualified for seaman status because his entire employment period lasted only 18 days, although he was hired to work solely on vessels in navigation doing the ship's work). Accordingly, we must examine the entire scope of Hartley's job assignment to determine whether he would have had a more enduring relationship to a vessel in navigation, and we cannot constrain our inquiry to the six days of employment immediately preceding Hartley's injury. *Teaver*, 434 Fed. App'x at 311 (citing *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 259 (3d Cir. 1998)); *see also Chandris*, 515 U.S. at 371–72, 115 S. Ct. 2172 (noting the seaman status inquiry is not limited to the course of the worker's service with a particular employer, but may consider his foregoing assignment to a vessel); *Hebert v. Weeks Marine, Inc.*, 251 Fed. App'x 305, 307 (5th Cir. 2007) (examining worker's transfer forms from one vessel to another to determine worker was seaman, despite his injury occurring on land); *Brown*, 2007 WL 4365384, at *6 (examining evidence that employer would probable assign worker to seaman's position when worker only had eighteen-day work history with employer).

Hartley did not present any evidence concerning his future work assignments or challenge Williams Southern's evidence that the entire job performing work on the well from RIG 403 in the intercoastal waterway only lasted one or two weeks. Hartley was not permanently assigned to these rigs.

14

Hartley also did not challenge Williams Southern's evidence that had he continued his employment, most of his job assignments would be on land-based wells and that more than 90% of Williams Southern's work is on land-based oil and gas wells. Thus, it is highly unlikely that Hartley would have spent 30 percent or more of his time on a vessel in navigation after the conclusion of the work on the marsh oil wells. *See Brown*, 2007 WL 4365384, at *6 (finding this factor dispositive in determining that worker did not qualify for seaman status when worker had been a maritime worker for only 18 days).

Because Hartley failed to demonstrate a substantial connection in terms of duration with a vessel in navigation, Williams Southern was entitled to summary judgment on the issue of Hartley's status as a Jones Act seaman.

## Conclusion

Because the evidence reflects that no reasonable juror could conclude Hartley had a substantial connection to a vessel in navigation, Williams Southern demonstrated there was no genuine issue of material fact regarding his seaman status. Accordingly, we affirm the trial court's judgment in favor of Williams Southern.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.