# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2023

Lyle W. Cayce
Clerk

No. 22-30488

———————

Lester Johnson,

*Plaintiff—Appellant*,

*versus*

Cooper T. Smith Stevedoring Company, Incorporated,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:20-CV-749

———————————————————

Before Richman, *Chief Judge,* and Stewart and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

Plaintiff Lester Johnson ("Johnson"), an injured maritime worker, appeals from the district court's grant of summary judgement to defendant Cooper T. Smith Stevedoring Company, Inc. ("Cooper") on his claims of Jones Act negligence, failure to pay maintenance and cure, unseaworthiness, and, alternatively, vessel negligence. The district court granted summary judgment after concluding that Johnson had not put forth evidence showing a genuine dispute of material fact concerning his seaman status or vessel negligence. We AFFIRM.

No. 22-30488

## I.

Cooper has a facility for midstream cargo operations near Darrow, Louisiana. At the Darrow facility, cargo operations occur while vessels are located midstream in the Mississippi River. In connection with its operations, Cooper owns and operates a weigh station vessel, the AMERICA, which is used to transfer bulk cargo from barges to oceangoing vessels.

Cooper's Darrow facility hires longshoremen on a per-day basis through the local union hall to load and unload vessels. Johnson worked sporadically as a longshoreman for Cooper as early as 1998 and worked regularly for Cooper from 2008 through the date of his injury on June 22, 2018, never going more than a week and a half without working. his employment with Cooper, Johnson performed various jobs including operating a front-end loader and track hoe, flagging cranes, and loading barges.

According to Cooper, longshoremen like Johnson are not "assigned" to the AMERICA, are not its crewmembers, and "do not operate it, maintain it, clean it, fuel it, or perform any other functions similar to her crew," but instead are "instruct[ed]" to report to particular vessels "to identify the mid-stream location of the cargo barges and oceangoing vessels on which they will be working." In other words, Cooper gives longshoremen like Johnson assignments to cargo barges and oceangoing vessels that are limited to performance of "discrete tasks," after which their connections to the vessels end. Cooper also has full-time employees, which include crewmembers assigned to the AMERICA.

On the evening of June 22, 2018, Johnson was injured when he fell to the deck of the AMERICA from the deck of an adjacent cargo barge, the SCF 24122. On the night of the injury, Johnson reported to Cooper's Darrow

office and was transported from the landing dock to the AMERICA via crew boat. Johnson's job during that night's operations was inside the hold of the SCF 24112, operating a front-end loader to move cargo, soybean mill, into the AMERICA's "bucket," which would then move the cargo to the hold of an oceangoing vessel, the M/V XENIA. Cooper did not own or operate the SCF 24112 or the M/V XENIA.

After the cargo in the hold of the SCF 24112 had been unloaded, Johnson positioned the front-end loader to be removed from the cargo barge's hold by the AMERICA's winch and then climbed an aluminum ladder to exit the hold himself. The ladder was owned by Cooper and permanently stored on the AMERICA. On the deck of the barge, Johnson and another longshoreman, Joe Thomas, pulled the ladder out of the hold of the barge and attempted to place it in its storage "slot" on the AMERICA. Doing so was a routine task for Johnson and other longshoremen working for Cooper.

This time, however, Johnson slipped, fell, and landed headfirst on a catwalk on the AMERICA's deck, 13 feet below. Johnson testified that he and Thomas did not have any problem with the ladder, but that he slipped on "cargo"—meaning pieces of grain and grain dust—on the deck of the barge. He testified that cargo dust "gets all over the place" whenever vessels are being loaded or unloaded and that he saw cargo all over the barge when he got out of the hold the night of the accident.

Johnson suffered numerous personal injuries and was hospitalized because of his fall. Over the next year and half, he underwent multiple medical procedures (including two surgeries) and physical therapy. In connection with his injuries, Johnson collected workers' compensation benefits from Cooper pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA").

No. 22-30488

Johnson filed suit against Cooper in federal district court in November 2020, alleging that he was a seaman and a member of the crew of the AMERICA, and bringing claims of Jones Act negligence, failure to pay maintenance and cure, and unseaworthiness (collectively, "seaman claims"). In the alternative, Johnson alleged that if he was not a seaman and was covered by the LHWCA, then Cooper as vessel owner had been negligent pursuant to 33 U.S.C. § 905(b) and general maritime law. After discovery, Cooper moved for summary judgment, asserting that (1) Johnson was not a "seaman"; (2) there were no facts to support a vessel negligence claim under 33 U.S.C. § 905(b); and (3) Johnson's general maritime law negligence claim was barred by § 905(a)'s exclusivity provision. The district court granted the motion and dismissed Johnson's claims with prejudice. According to the district court, Johnson failed to cite to evidence that showed a genuine dispute of material fact as to whether he was a seaman and, alternatively, as to vessel negligence.

## II.

"This court reviews de novo a district court's grant of summary judgment, applying the same standard as the district court." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (citation omitted). "All evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor." *Id.* at 328–29 (citation omitted).

No. 22-30488

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A party opposing summary judgment "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "[C]onclusory allegations" and "unsubstantiated assertions" will not suffice. *Id.* (citations omitted).

### III.

On appeal, Johnson challenges the district court's grant of summary judgment to Cooper on his seaman claims and his vessel negligence claim.[1] As explained below, after reviewing the record, we agree with the district court that Johnson failed to show a genuine dispute of material fact as to his claims. Cooper was therefore entitled to summary judgment.

### A.

"The Jones Act grants 'a seaman' a cause of action against his employer in negligence." *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997

---

[1] Cooper also asserts that Johnson's general maritime law negligence claim is barred by the exclusivity provision of 33 U.S.C. § 905(a) because Cooper was his employer and secured payment of LHWCA compensation for his injury. "The liability of an employer" for LHWCA compensation "shall be exclusive and in place of all other liability of such employer to the employee . . . except . . . if an employer fails to secure payment of compensation as required by" the LHWCA. 33 U.S.C. § 905(a). The district court ruled that Johnson conceded this issue by failing to brief it and dismissed his general maritime law negligence claim as barred by § 905(a). Johnson's appellate brief likewise does not address Cooper's § 905(a) argument, and he has thus waived or abandoned the issue. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995); *McDowell v. Home Depot USA, Inc.*, 126 F. App'x 168, 170 (5th Cir. 2005) ("Where a claim is not briefed on appeal, it is abandoned.")

F.3d 564, 568–69 (5th Cir. 2021) (quoting 46 U.S.C. § 30104).[2]  "As the courts have often lamented, the term 'seaman' is not defined in the Jones Act." *In re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000).  Thus, it has largely fallen to the courts "to establish workable tests to define the word 'seaman.'" *Sanchez*, 997 F.3d at 569.

To qualify as a "seaman," a maritime worker must satisfy a two-part test: he or she (1) "must contribute to the function of the vessel or to the accomplishment of its mission," and (2) "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Endeavor Marine*, 234 F.3d at 290 (citing *Chandris*, 515 U.S. at 368)).  Johnson claims that he is a seaman based on his connection to the AMERICA.

The first part of this test, the "threshold requirement" of whether a worker "does the ship's work," is "very broad." *Id.* (cleaned up).  "'All who work at sea in the service of a ship' are *eligible* for seaman status." *Chandris*, 515 U.S. at 368 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991)) (emphasis in original).  The parties and the district court all agree that Johnson meets the first part of the test, and so do we.  Johnson's work loading and unloading cargo contributed to the mission of the AMERICA, as well as the various cargo barges and oceangoing vessels.

The second part of the test—whether the worker has a substantial connection to a vessel—has two elements:  the worker's connection must be "substantial in terms of both [1] its duration and [2] its nature." *Sanchez*, 997 F.3d at 571 (quoting *Chandris*, 515 U.S. at 368).  For the duration

---

[2] In addition to damages for negligence under the Jones Act, seamen may also recover maintenance and cure and damages for unseaworthiness under the general maritime law. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).

element, the "rule of thumb for the ordinary case" is that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman." *Chandris*, 515 U.S. at 371. Recently, in *Sanchez v. Smart Fabricators*, the en banc court refined this Circuit's test for the nature element. 997 F.3d at 573–74. Post-*Sanchez*, we consider four factors when deciding whether a worker's connection to a vessel is substantial in nature: (1) the worker's exposure to "perils of the sea," meaning the hazards of a maritime working environment; (2) whether "the worker owe[s] his [or her] allegiance to the vessel, rather than simply to a shoreside employer"; (3) if his or her work is "sea-based or involve[s] seagoing activity"; and (4) whether "the worker's assignment to a vessel [is] limited to performance of a discrete task after which the worker's connection to the vessel end[s]," or whether he or she stays with the vessel. *Id.* at 574.

Johnson's claim to seaman status founders on the duration element of the substantial-connection test. In opposing Cooper's motion for summary judgment in the district court, Johnson relied on two citations to his deposition testimony to establish that he was a seaman: (1) that he worked for Cooper for more than 20 years, and (2) that he took a crew boat provided by Cooper from the Darrow landing dock to the AMERICA on the night he was injured. The district court found this deposition testimony insufficient to create a genuine dispute of material fact as to the duration element. We agree. The fact that Johnson performed longshoring work for Cooper for 20 years does not, without more, create a genuine dispute of material fact as to whether he had a connection to the AMERICA that was substantial in duration. Likewise, the fact that Johnson was transported by crew boat to the AMERICA on the night he was injured and was injured when he fell from an adjacent vessel on to the AMERICA is not enough to qualify him as a seaman. *See Chandris*, 515 U.S. at 363 (rejecting a "snapshot" test). A "more enduring relationship" with the AMERICA is required. *Id.*

No. 22-30488

On appeal, Johnson attempts to bolster his claim to seaman status by citing to the declaration of Cooper's Director of Maintenance, James Gauthreaux, which describes Cooper's midstream operations. Relying on the declaration, Johnson's argument seems to be that because his longshore work for Cooper took place midstream in the Mississippi River and because the AMERICA is part of Cooper's midstream operations, we should infer that he had a connection to the AMERICA that was substantial in duration. Unfortunately for Johnson, however, nothing in Gauthreaux's declaration allows us to draw that inference.[3]

Assuming that this argument is not forfeited for failure to raise it in district court, *see Rollins v. Home Depot, USA*, 8 F.4th 393, 397–98 (5th Cir. 2021), the Gauthreaux declaration does not create a genuine dispute of material fact as to Johnson's status. The declaration establishes that longshoremen like Johnson performed their work for Cooper on vessels midstream and that Cooper used the AMERICA in connection with its midstream operations. But critically, the declaration is silent as to the duration of the connection that longshoremen like Johnson had with the AMERICA. Viewing the evidence in the light most favorable to Johnson, we simply do not know and cannot infer based on this record how often he reported to or worked on, around, in service of, or in connection with the AMERICA; there is a gap in the summary-judgment evidence that dooms his claim to seaman status. *See Little*, 37 F.3d at 1075 (explaining that "unsubstantiated assertions" do not satisfy nonmovant's summary

---

[3] We also note that the section of Johnson's appellant brief that most forcefully argues that he had a connection to the AMERICA that was substantial in duration is tellingly short on record citations to support its factual assertions. *See* Fed. R. App. P. 28(a)(8) (requiring argument contain "citations to . . . parts of the record on which the appellant relies"); *see also Little*, 37 F.3d at 1075 (explaining that "unsubstantiated assertions" do not satisfy nonmovant's summary judgment burden).

judgment burden); *cf. Endeavor Marine*, 234 F.3d at 291 (holding that crane operator who worked on a derrick barge had a connection to the vessel that was substantial in duration because he spent almost all his time working on the vessel in the 18 months prior to his accident).

Because Johnson did not show a genuine dispute of material fact as to whether he had a connection to the AMERICA that was substantial in duration, the district court was correct to grant summary judgment in Cooper's favor on Johnson's seaman claims, and we need not proceed to consider the nature prong of the substantial-connection test.

## B.

In the alternative to his seaman claims, Johnson brought a claim against Cooper as owner of the AMERICA pursuant to the LHWCA, 33 U.S.C. § 905(b). The district court granted summary judgment to Cooper on this claim because Johnson failed to show a genuine dispute of material fact as to vessel negligence. We agree.

Section 905(b) provides a cause of action to a person injured by "negligence of a vessel," with the caveat that "[i]f such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." 33 U.S.C. § 905(b). In *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the Supreme Court "outlined the three general duties shipowners owe to longshoremen." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (citing *Scindia*, 451 U.S. at 167). Johnson contends that Cooper breached two of the *Scindia* duties: (1) the "turnover duty," which "relates to the condition of the ship upon the commencement of stevedoring operations"; and (2) the "active control" duty, which "provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the

'active control of the vessel'" during stevedoring operations. *Id.* (citing *Scindia*, 451 U.S. at 167–68).

Johnson failed to cite to any record evidence showing that Cooper breached either duty. *See* Fed. R. Civ. P. 56(c) (explaining that a party must support assertion that there is a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute"); *Little*, 37 F.3d at 1075 (explaining that "conclusory allegations" and "unsubstantiated assertions" do not satisfy nonmovant's summary judgment burden). Nor could he, as an independent review of the record shows no evidence of vessel negligence. The district court was correct to grant summary judgment to Cooper on Johnson's § 905(b) claim.

## IV.

As the district court stated in its ruling, summary judgment is about evidence. "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) (emphasis in original). Because Johnson did not—and could not, based on his failure to put forth evidence—show a genuine dispute of material fact as to his claims, the district court's grant of summary judgment to Cooper is AFFIRMED.