Frank **PELLEGRINO**, Plaintiff,

v.

A. H. **BULL STEAMSHIP CO.**, Defendant and Third-Party Plaintiff,

v.

**INTERNATIONAL TERMINAL OPER-ATING CO., Inc.**, Third-Party Defendant.

No. 61 Ad. 456.

United States District Court,
S. D. New York.

April 17, 1969.

---

Zimmerman & Zimmerman, New York City, for libelant.

Kirlin, Campbell & Keating, for defendant A. H. Bull Steamship Co.

Alexander, Ash & Schwartz, New York City, for third-party defendant International Terminal Operating Co.

CANNELLA, District Judge.

Action by the plaintiff for money damages for injuries allegedly caused by the unseaworthiness of the vessel, S.S. Beatrice, owned and operated by the defendant.[1] At the time of his injury, plaintiff was employed as a longshore-

---

1. At the close of the plaintiff's direct case, he withdrew the alleged negligence of the defendant as a basis for recovery. The trial then proceeded on the claim of unseaworthiness alone.

man aboard the S.S. Beatrice by the third-party defendant, which had men engaged in stevedoring work aboard the vessel. The Court finds that the plaintiff has established, by a fair preponderance of the credible evidence, that the vessel was unseaworthy, said unseaworthiness being the proximate cause of the plaintiff's injuries, that the plaintiff was free from any contributory negligence, and that judgment shall be entered on behalf of the plaintiff against the defendant. The Court further finds that the defendant has established that the third-party defendant breached its warranty of workmanlike service and that it is liable to indemnify the defendant for the judgment obtained against it by the plaintiff. The defendant has additionally requested relief in the form of costs, disbursements and reasonable attorney's fees incurred in defense of the action and said requests are granted.

The Court finds that it has jurisdiction over this action by virtue of the provisions of the general maritime law. 28 U.S.C. § 1333(1).

The parties have stipulated, and the Court finds, that on March 3, 1961, the defendant was the owner of the S.S. Beatrice which at that time was docked at Pier A in Brooklyn, New York in the process of being loaded. The defendant employed the officers and crew of the vessel, some of whom were aboard. Cargo was being loaded into hatch #1 of the S.S. Beatrice by the third-party defendant, International Terminal Operating Co. (I.T.O.), pursuant to an agreement made with the defendant. The defendant further stipulated that if the plaintiff was on board as an employee of I.T.O., he was lawfully aboard the vessel since his employer was engaged in cargo operations contracted for by the defendant.

The Court finds that the evidence establishes that the cargo was being delivered on board the vessel in question and loaded into the #1 hatch by means of pallets. On March 3, 1961, the plaintiff, a hold man, commenced work at approximately 8 A.M. and was injured between 3 and 3:30 P.M. when a metal drum containing foodstuffs struck his left foot. The drum was on a pallet which was constructed of wood and was about four feet in width by five and one-half feet in length. Such a pallet was designed to hold six of these metal drums at a time. When the pallet with the six drums landed in the hold, the plaintiff sought to tilt the drum in order to move it off the pallet to put it in its place in storage. The Court finds that the method used by the plaintiff on March 3, 1961 was the usual and customary way of removing such a drum off a pallet for storage. As the plaintiff tilted the drum, he could not hold it in place and although he attempted to control it, it took a wild turn. He was unable to hold it and it bounced off the pallet and struck his left foot.

After the incident, the plaintiff looked at the pallet and discovered that in the place where the drum had been on the pallet, a piece was missing. This area was about two to two and one-half feet long by two to four inches wide. Prior to the accident, while he was doing his work in the usual and customary manner, the plaintiff could not have observed that the piece of wood was missing from the pallet. The pallet was dirty, an indication that it had been used many times. The drums in question were about two feet in diameter, three feet high and weighed between 600 and 700 pounds. The removal of one of these drums did not require much of an effort for a longshoreman. He merely had to tip the drum and ordinarily did not require or have any help in doing so. At the time of the accident, the plaintiff was 5'4" tall and weighed approximately 140 to 150 pounds.

After the drum had dropped onto his left foot, the plaintiff sat down, took off his shoe and discovered his sock full of blood. Plaintiff removed his sock and blood gushed from his big toe. He was helped off the ship to the timekeeper's office and then taken to Dr. Tagliagambe's office by car. X-rays were taken there and established that plaintiff

had fractured two toes. The doctor applied splints and sent the plaintiff home. Plaintiff was thereafter treated about three times a week for six weeks and the splints were then removed. Plaintiff used crutches for about six weeks and a cane for two weeks after he ceased use of crutches. The doctor's diagnosis of plaintiff's injuries was a contusion and sprain of the left forefoot, fracture of the proximal phalynx of the left big toe and a chip fracture of the distal phalynx of the third left toe.[2] The Court finds that the fair and reasonable value of the necessary medical services here was $260.00. The plaintiff was treated some 35 times and was out of work for almost ten weeks. Thereafter, he lost overtime wages for a total of some five days.[3] After his return to work, his big toe continued to hurt him until about July of 1962. Plaintiff testified that he now feels well except for occasional pain. Plaintiff had no prior injury to the toes. The total amount of lost wages was $1,360.00.

The Court finds that the missing strip in the pallet was the proximate cause of the wild spin of the metal drum and its subsequent fall onto the plaintiff's foot causing the injuries enumerated above. The Court further finds that the pallet was supplied by I.T.O. There was evidence presented that at one time the defendant possessed its own pallets for cargo loading, but when I.T.O. came to the terminal, the defendant sent the pallets down to Puerto Rico where they do their own stevedoring work. The Court has examined the agreement between the defendant and third-party defendant, dated September 28, 1959, and finds that it provides for I.T.O. to supply cargo handling equipment such as this pallet.[4] In addition, the Court finds that the drums were delivered to the pier area by truck, and were placed on pallets in an area reserved for I.T.O.'s use and owned by it. From a reading of the contract between the shipowner and I.T.O. and the other evidence submitted on this point, the Court finds that in this particular case the pallet in question was supplied by I.T.O.

The shipowner owes an absolute and non-delegable duty to seamen and longshoremen properly aboard its vessel[5] to provide a seaworthy ship. Although it has no obligation to provide an accident free vessel, the shipowner does have a duty "to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; * * * *"[6] In the context of the facts in the case at bar, the question is whether the pallet being used aboard the S.S. Beatrice was "'within the usual and customary standards' of comparable maritime activity"[7] In applying this essentially pragmatic test,[8] there is no question of notice to the shipowner. Furthermore, it is not relevant whether someone other than the shipowner created the unseaworthy condition or brought an already existing unseaworthy condition into play.[9] In the

---

2. No attempt will be made to detail all medical evidence presented. Plaintiff suffered the injuries stated above, has endured pain and suffering and will have some discomfort in the future.

3. His overtime wages were time and a half with a standard hourly wage rate of $3.-08.

4. The agreement was introduced into evidence as third-party defendant's Exhibit A and the relevant part referring to cargo handling equipment is Section #6.

5. Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

6. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).

7. Muzzo v. Rederi, A/S Wallenco, Stockholm, Sweden, 304 F.2d 506, 510 (2d Cir. 1962).

8. Poignant v. United States, 225 F.2d 595 (2d Cir. 1955).

9. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Poignant v. United States, *supra*.

instant motion, therefore, it matters not that I.T.O. was the party which supplied the pallet. This pallet was patently defective and clearly was not reasonably fit for its intended use. The missing portion on it caused this accident and the subsequent injury to the plaintiff. The S.S. Beatrice was unseaworthy, the unseaworthiness was the proximate cause of plaintiff's injuries and the ship is liable directly to the plaintiff for breach of its warranty of seaworthiness. No longer can the ship claim immunity from liability in a case such as this by claiming that it was the operational negligence of the stevedoring company which caused the unseaworthy condition.[10] Defendant is absolutely liable here. Plaintiff was not contributorily negligent in any degree and is entitled to the full entry of judgment against the defendant. The Court in considering plaintiff's actual damages and past and future pain and suffering, directs that judgment be entered for the plaintiff in the amount of $12,500.00.

■ The question of the claimover by the defendant against the third-party defendant is based upon the warranty of workmanlike service owed by I.T.O. to the shipowner. This duty of indemnification is based upon a contractual relationship, express [11] or implied, between the shipowner and the stevedore.[12] The theory behind the warranty of workmanlike service and duty of indemnification owed by the stevedore has been expressed often. In DeGioia v. United States Lines Company, 304 F.2d 421 (2d Cir.1962), the court stated:

> The primary source of the shipowner's right to indemnity, as a practical matter, is his nondelegable duty to provide a seaworthy ship, by virtue of which he may be held vicariously liable for injuries caused by hazards which the longshoremen either created or had the opportunity to eliminate or avoid. The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by the shipboard injuries to the enterprise, to the institution or institutions most able to minimize the particular risk involved. (Citations omitted). 304 F.2d at 425–426.

The Court has already noted its finding that the pallet furnished on the day of plaintiff's accident was patently defective and that the pallet was supplied by the third-party defendant I.T.O. Thus the stevedore created the very hazard which was the proximate cause of plaintiff's injuries and it was the party best able to minimize or totally eliminate this risk. Apart from questions of the duty of care owed to the plaintiff, I.T.O., as supplier of this pallet not reasonably fit for its intended purpose, breached its warranty of workmanlike service and is liable in indemnity to the defendant.[13]

■ The inspection required to find the defect in this pallet was not such a minute one that the imposition of this standard places an undue burden on the stevedore. The evidence makes it clear that a reasonable inspection would have

---

10. Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967); Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961 (2d Cir. 1967) cert. denied 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968); Alexander v. Bethlehem Steel Corp., 382 F.2d 963 (2d Cir. 1967).

11. The contract between the parties is silent as to the matter of indemnity for tort claims.

12. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct.

438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

13. Italia Societa, etc. v. Oregon Stevedoring Company, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Booth Steamship Company v. Meier & Oelhaf Co., 262 F.2d 310 (2d Cir. 1958). See Crumady v. The Joachim Hendrik Fisser, supra.

disclosed the defect in the pallet and that I.T.O.'s conduct was negligent in failing to correct the defect in the equipment and in supplying it in its defective condition. The duty to make an inspection necessary to discover the type of defect in question here is a logical amplification of the standard set forth in Section 9.61(a) of the Safety and Health Regulations for Longshoring.[14] The standard set out in this regulation, at a minimum, codifies an already existing standard of care [15] and the record is sufficient for the court to find that the third-party defendant had actual or constructive knowledge of the defect in this equipment. By supplying this defective piece of equipment for use aboard the S.S. Beatrice on March 3, 1961, the third-party defendant breached its warranty of workmanlike service and is liable to indemnify the defendant for the judgment by the plaintiff against it.[16]

The only remaining issue before the Court is the demand for costs, disbursements and attorney's fees against the stevedore as part of the defendant's recovery on the claim-over. Where a plaintiff longshoreman recovers a judgment against the shipowner and the shipowner is entitled to recovery over against the stevedore, as is the case here, costs, disbursements and attorney's fees are properly recoverable by the shipowner.[17] Accordingly, the requested relief is granted. The reasonable value of the attorney's fees may be agreed upon by the parties and the Court directs that a concerted effort be made to reach a stipulated figure. If the parties are unable to agree, the fees will be fixed by the Court.

All motions on which the Court reserved decision at the time of trial are denied. The above shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

It is adjudged that the vessel S.S. Beatrice was unseaworthy and therefore the plaintiff shall have judgment against the vessel's owner, A. H. Bull Steamship Co., in the amount of $12,500.00. Further, it is adjudged that the third-party defendant, International Terminal Operating Co., Inc., breached its warranty of workmanlike service and therefore that the defendant shall have judgment in indemnity on its third-party complaint along with the assessment of costs, disbursements and reasonable attorney's fees.

So ordered.

14. 29 C.F.R. § 1504.61 which provides: "All gear and equipment provided by the employer shall be inspected by the employer or his authorized representative before each use and, when necessary, at intervals during its use, to ensure that it is safe."

15. It is not necessary to decide if a violation of the regulation constitutes negligence *per se*. *See* Provenza v. American Export Lines, Inc., 324 F.2d 660 (4th Cir. 1963).

16. The record does not show conduct on the defendant's part sufficient to preclude its indemnity. *See* Weyerhaeuser Steamship Co. v. Nacirema Operating Co., *supra* 355 U.S. at 567, 78 S.Ct. 438. The holding of indemnity is not based upon principles of active-passive or primary-secondary negligence. *See* Weyerhaeuser Steamship Co. v. Nacirema Operating Co., *supra* at 569, 78 S.Ct. 438.

17. Massa v. C.A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.) cert. denied 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964).