16-1092-cv
*In re Complaint of Buchanan Marine, L.P.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2016

(Argued:    May 22, 2017          Decided:     October 27, 2017)

Docket No. 16-1092-cv

IN THE MATTER OF THE COMPLAINT OF BUCHANAN MARINE, L.P., AS BAREBOAT
CHARTERER OF THE BARGE B-252, IN THE MATTER OF THE COMPLAINT OF A.P.
FRANZ, JR., TRUSTEE, AS OWNER,

*Petitioners-Counter-Defendants-Appellees,*

TILCON NEW YORK, INC.,

*Claimant-Counter-Claimant-Appellee,*

v.

WAYNE VOLK, KAREN VOLK,

*Claimants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

Before:

KEARSE, CABRANES, AND CHIN, *Circuit Judges*.

———————————

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*), dismissing a barge worker's claims under the Jones Act, 46 U.S.C. §§ 30101-30106, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, general maritime law, and New York state law for personal injuries sustained while working on a barge, and granting a complaint for exoneration from liability pursuant to the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501-30512. We conclude that the district court correctly held that the barge worker, who inspected and maintained moored barges used to transport rock from a quarried rock processing facility down the Hudson River, was not a "seaman" for purposes of the Jones Act, but that the district court erred in dismissing certain claims against the owner of the barge and the operator of the rock processing facility.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

———————————

EDWARD P. FLOOD, LYONS & FLOOD, LLP, New York, New York, *for Petitioners-Counter-Defendants-Appellees*.

2

ERIC M. KURTZ, COOK, NETTER, CLOONAN, KURTZ, & MURPHY P.C., Kingston, New York, *for Claimant-Counter-Claimant-Appellee.*

STEVEN M. MELLEY (Richard Nardone, *on the brief*), STEVEN M. MELLEY, P.L.L.C., Rhinebeck, New York, *for Claimants-Appellants.*

---

CHIN, *Circuit Judge*:

In this case, claimant-appellant Wayne Volk worked at a quarried rock processing facility on the Hudson River, inspecting and maintaining barges used to transport rock down the river. In the accident that led to these proceedings, Volk was inspecting a moored barge when he slipped on some loose stone and fell, injuring himself. He asserted claims against the barge company as his employer, the owner of the barge, and the operator of the rock processing facility, under the Jones Act, 46 U.S.C. §§ 30101-30106, the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 901-950, general maritime law, and New York state law.

The principal question presented is whether Volk was a "seaman" within the meaning of the Jones Act. The district court (Sharpe, *J.*) held that Volk

3

was not a seaman and dismissed his claims under the Jones Act.  It also dismissed Volk's remaining claims.

We affirm the dismissal of Volk's Jones Act claims because we agree with the district court that Volk does not qualify as a "seaman" within the meaning of the Jones Act.  We hold, however, that the district court erred in dismissing certain of Volk's remaining claims against the owner of the barge and the operator of the rock processing facility.  We therefore affirm in part and vacate in part and remand for the district court to conduct further proceedings consistent with our rulings below.

## BACKGROUND

**I.    *The Facts***

The facts are largely undisputed and are summarized in the light most favorable to Volk, against whom summary judgment was granted.

Volk worked for petitioner-counter-defendant-appellee Buchanan Marine, L.P. ("Buchanan") at the Clinton Point quarried rock processing facility on the Hudson River, in Dutchess County, New York, as a "barge maintainer"

from 1999 until his accident on May 19, 2011.[1]  At the Clinton Point facility, claimant-counter-claimant-appellee Tilcon New York, Inc. ("Tilcon") processes quarried rock for use in, *e.g.*, construction work, and loads the rock onto barges supplied by Buchanan.  Buchanan then transports the loaded barges, using its tugboats, down the Hudson River to Tilcon's customers.[2]

The loading process has three steps.  First, before an empty barge is loaded, and while it is tied to the dock, it is inspected by a Buchanan barge maintainer.  The barge maintainer checks the barge for damage and excess water and repairs any damage so that the barge is in acceptable condition for loading. Second, the barge is moved to the loading facility by Tilcon, where it is loaded with quarried rock.  Third, after the barge is loaded, it is moved back to the dock by Tilcon, where a Buchanan barge maintainer conducts a final inspection. During the first and third steps of the loading process, the barge is in the water and secured to the dock, either tied directly to the dock or to barges already tied to the dock.  Moored barges may be three or four barges deep, with the closest

---

[1]     Volk also used other phrases throughout the proceedings to describe his position, such as "[w]elder, pumper, [and] boat checker."  App'x 982.

[2]     Buchanan's barges are "dumb" barges, meaning they have no independent means of propulsion and, therefore, a tugboat is required to transport them.

barge tied to the dock and the outward barges tied to one another. When a barge was tied to other barges -- rather than tied directly to the dock -- barge maintainers would climb over the barges to get to the one they needed to inspect.

When Volk was inspecting a barge, he would walk along the perimeter of the barge on the "margin decks," which ran the length of the barge. App'x at 185. The margin decks were "so narrow [that] they were difficult to walk on or stand on," *id.*, lacked guard or hand rails, and were often wet and soiled with excess gravel that spilt over from the loading process. When a barge required repairs, Volk would sometimes stand on a pontoon work boat -- a flat floatable device powered by a motor -- on the barge's water side to do the work.

Volk was not assigned to any specific barge; rather, he worked on all Buchanan barges that arrived for loading at the Tilcon facility. Volk was not a crewmember of any of Buchanan's tugboats that transported the barges down the Hudson River. He worked an hourly shift, went home at the end of each work day, and did not take meals or sleep on any barge. He was a member of the International Union of Operating Engineers, which represents equipment operators. He did not belong to a maritime union or hold a maritime license.

6

On May 19, 2011, Volk was walking along the margin decks of Barge B-252 (the "Barge"), which had been loaded with stone, when he slipped on excess wet stone and injured his right arm and shoulder on the side of the Barge. He filled out an incident report with his dock supervisor, Timothy Conn, the same day. The next day, Conn drove Volk to the local medical clinic, where Volk was diagnosed with a sprained arm and prescribed pain medication. Later that day, Volk saw a chiropractor, who advised him that he could not work. Volk has not worked since the accident and has been receiving workers' compensation benefits under the LHWCA.

## II.    *The Proceedings Below*

On October 16, 2012, Volk and his wife Karen Volk commenced a personal injury action against Buchanan and Tilcon in New York State Supreme Court, Ulster County. On April 15, 2013, A.P. Franz, Jr., the owner of the Barge, and Buchanan, as bareboat charterer of the Barge,[3] commenced this action in the

---

[3]    A "bareboat charter" is a "charter under which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations," typically including the provision of "personnel, insurance, and other materials necessary to operate the vessel." Black's Law Dictionary 284 (10th ed. 2009). Thus, the "bareboat charterer" -- also called a "bareboat charterparty," among other things, *see id.* -- is the non-owner operator of a vessel. Here, Franz had bareboat chartered the Barge along with his fleet of other barges and

district court pursuant to the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501-30512, seeking exoneration from or limitation of liability.[4]  In accordance with Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, the court approved a $47,420.77 security bond, representing Franz and Buchanan's interest in the Barge, directed issuance of notice to all persons asserting claims affected by the limitation proceeding, ordered that any claim related to the incident be filed with the court within a specified time period, and enjoined the filing or prosecution of any suits related to the incident.[5]

Tilcon and the Volks answered the complaint and asserted counterclaims.  Tilcon asserted claims against Franz and Buchanan for

---

tugboats to Buchanan.  Pursuant to the bareboat charter, Franz transferred exclusive control to Buchanan to use, operate, command, and navigate his fleet of barges and tugboats.

[4]     The Limitation of Liability Act limits the owner of a vessel's liability for maritime accidents to "the value of the vessel and pending freight."  46 U.S.C. § 30505(b).  The statute thus alters the usual rules of vicarious liability.  *See In re City of N.Y.*, 522 F.3d 279, 283 (2d Cir. 2008).

[5]     "Typically, 'once the [vessel] owner files a petition for limitation, all other claims and proceedings against the owner related to the matter in question shall cease.'"  *In re Petition of Germain*, 824 F.3d 258, 264 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 244 (2d Cir. 2014)) (alterations omitted).

8

indemnification or contribution. The Volks asserted claims against Franz, Buchanan, and Tilcon under the Jones Act, the LHWCA, general maritime law, and New York state law.

The Volks filed a motion to dismiss on August 16, 2013. The district court denied the motion on March 28, 2014. The parties thereafter cross-moved for summary judgment. On March 10, 2016, the district court granted the motions of Franz, Buchanan, and Tilcon, denied the Volks' cross-motion, and granted Franz and Buchanan's complaint for exoneration from liability. The court exonerated Franz, Buchanan, and Tilcon from liability for Volk's injury, except for Buchanan's liability for workers' compensation. The court concluded that Volk's Jones Act claims fail because he is not a "seaman" under the Jones Act. The court also concluded that all of Volks' remaining claims under the LHWCA, general maritime law, and state law fail.

This appeal followed.

### DISCUSSION

"We review *de novo* a district court's grant of summary judgment to determine whether the district court properly concluded that there was no genuine dispute as to any material fact, such that the moving party was entitled

9

to judgment as a matter of law."  *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016).

## I.    *Overview*

Maritime workers injured in the course of their employment may proceed, depending on their status and the status of the responsible party, on four possible theories or sets of theories: the Jones Act, the LHWCA, general maritime law, and state law.  *See generally O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61-62 (2d Cir. 2012).

The Jones Act confers a cause of action in negligence to any "seaman injured in the course of employment."  46 U.S.C. § 30104.  Prior to the passage of the Jones Act, general maritime law entitled seamen only to "maintenance and cure" from their employer, and to damages "from the vessel's owner for [any] injuries received . . . in consequence of the unseaworthiness of the ship."  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (internal quotation marks omitted).  Suits to recover for injuries caused by their employers' negligence, however, were barred.  *Id.*  The Jones Act changed this by creating "an express right of action in tort."  *O'Hara*, 294 F.3d at 61-62.

The LHWCA is a workers' compensation system, which provides scheduled compensation for injury to a broad range of land-based maritime workers. *Chandris*, 515 U.S. at 355. It covers "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker," 33 U.S.C. § 902(3), but does not include "a master or member of a crew of any vessel," *id.* § 902(3)(G).[6] The scheduled no-fault compensation structure is the *exclusive* remedy for injured workers against their employers. *Id.* § 905(a).

The LHWCA does not, however, affect an employee's right to sue the owner or charterer of the vessel on which he or she was injured for negligence. *Id.* § 933(a); *see also Gravatt v. City of N.Y.*, 226 F.3d 108, 115 (2d Cir. 2000) (noting that, under LHWCA, employee "may sue negligent third parties in tort, notwithstanding his entitlement to no-fault compensation provided by the employer"). Pursuant to § 905(b), a claimant retains the right to bring an action for damages "caused by the negligence of a vessel, . . . against such vessel as a

---

[6]     A longshoreman is "[a] maritime laborer who works on the wharves in a port; esp., a person who loads and unloads ships." Black's Law Dictionary 1085 (10th ed. 2009).

third party." 33 U.S.C. § 905(b). A claimant is not required to elect between statutory compensation from the employer and an action for damages against another, as he "can both accept compensation and file a civil action against a third party tortfeasor." Thomas J. Schoenbaum, 1 Adm. & Mar. Law § 7-10 (5th ed. 2016). A cause of action under § 905(b) against the vessel owner is for negligence in maritime tort, *id.*, and "[t]he remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter," 33 U.S.C. § 905(b).

In some cases, the vessel owner is also the employer, and a different analysis will be required. *Gravatt*, 226 F.3d at 118-20; 33 U.S.C. § 905(b). In these dual-capacity situations, "[i]nsofar as the employer-vessel is negligent in its stevedore-employer capacity, it is immune from suit under section 905(a), [but,] insofar as it is negligent in its vessel capacity, it will be liable under section 905(b) in the same manner as a third party." *Gravatt*, 226 F.3d at 120.[7] *See generally* Schoenbaum § 7-10.

In short, "[t]he Jones Act allows seamen to recover for negligence against their employers; the LHWCA authorizes maritime workers *other than*

---

[7]     A "stevedore" is a "person or company that hires longshore and harbor workers to load and unload ships." Black's Law Dictionary 1640 (10th ed. 2009).

seamen to recover for negligence, but only against parties *other than* their employers." *O'Hara*, 294 F.3d at 62. The two remedies are mutually exclusive. *Chandris*, 515 U.S. at 355-56 ("[T]he Jones Act and the LHWCA are mutually exclusive compensation regimes.").

The Jones Act does not define "seaman," but, as noted above, the LHWCA excludes from coverage "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). Thus, courts have recognized that a worker is a seaman if he or she is "a master or member of a crew of any vessel." *Id.*; *see O'Hara*, 294 F.3d at 62 ("It is . . . 'odd but true that the key requirement for Jones Act coverage now appears in another statute.'" (quoting *Chandris*, 515 U.S. at 356)). We discuss the elements of "seaman" status more fully below.

Maritime workers may also have common law remedies available to them, including, as noted, general maritime remedies for "maintenance and cure" and "unseaworthiness." *Chandris*, 515 U.S. at 354 (internal quotation marks omitted). The Jones Act -- unlike the LHWCA -- does not eliminate pre-existing common law causes of action. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 29 (1990) ("The Jones Act evinces no general hostility to recovery under maritime law."); *see also Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 429 (2009) (Alito, J.,

13

dissenting). And while the LHWCA eliminates common law claims against the employer, it permits harbor workers to sue third-party vessel owners for negligence under federal common law standards that establish certain duties of care. *See O'Hara*, 294 F.3d at 64-65.

In *Scindia Steam Navigation Company v. De Los Santos*, 451 U.S. 156 (1981), the Supreme Court set forth standards to guide judicial determinations of liability under the LHWCA and general maritime law. It identified three duties of care. First, as we have noted, the "turnover duty" imposes on the vessel owner a duty to "exercise ordinary care under the circumstances to have the ship . . . in such condition that an . . . experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety" and "a duty to warn stevedores . . . of hazards of which the [owner] know[s] or should know and which are unknown or would not be obvious to the stevedore." *O'Hara*, 294 F.3d at 65 (citing *Scindia*, 451 U.S. at 167). Second, the active control duty imposes liability on an owner "if it actively involves itself in [the vessel's] operations and negligently injures" the employee. *Id.* (internal quotation marks omitted). Third, the duty to intervene requires the vessel owner to "intervene if it acquires actual knowledge that (1) a condition of the vessel or

its equipment poses an unreasonable risk of harm and (2) the stevedore . . . is not exercising reasonable care to protect its employees from that risk."  *Id.* (internal quotation marks omitted).

Finally, in some circumstances, maritime workers may assert claims under state law.  *Id.* at 68 (discussing claims under New York Labor Law §§ 200 and 241(6)).

## II.     *Jones Act Claims*

The district court dismissed Volk's Jones Act claims because it concluded that Volk did not qualify as a "seaman" within the meaning of the Jones Act.  We agree.

### A.     Applicable Law

Congress enacted the Jones Act in 1920 to provide "heightened legal protections to seamen because of their exposure to the perils of the sea."  *O'Hara*, 294 F.3d at 61 (internal quotation marks and alterations omitted).  It "gives seamen an express right of action in tort because of their status as 'wards of the admiralty' who 'are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour.'"  *Id.* at 61-62 (quoting *Chandris*, 515 U.S. at 354-55).  "[T]o qualify as a seaman under the Jones

15

Act, a maritime employee must have a substantial employment-related connection to a vessel in navigation," *Chandris*, 515 U.S. at 373 (emphasis omitted), or "to an identifiable group of such vessels," *id.* at 368.

To have an "employment-related connection" to a vessel, "the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission." *O'Hara*, 294 F.3d at 63 (internal quotation marks omitted). This standard is liberal: "[t]he putative seaman need not aid in the navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work." *Id.* (internal quotation marks omitted); *see also Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (noting this prong focuses on whether the worker "contributed to the function of the vessel or the accomplishment of its mission"). Moreover, "the worker's connection to the vessel must be 'substantial in both its duration and its nature.'" *O'Hara*, 294 F.3d at 63 (quoting *Tonnesen v. Yonkers Contracting Co.*, 82 F.3d 30, 32 n.2 (2d Cir. 1996)). This inquiry "focuses on whether the [worker] derives his livelihood from sea-based activities." *Id.* (internal quotation marks omitted). "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act

16

protection when the course of their service to a vessel takes them ashore."

*Chandris*, 515 U.S. at 361.

Nevertheless, the "recognized [] distinction between land-based and sea-based maritime workers" does not mean "that a maritime employee must work *only* on board a vessel to qualify as a seaman under the Jones Act." *Id.* at 363. Rather, "the ultimate inquiry" is whether, in light of the totality of the circumstances, "the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370; *see also Harbor Tug & Barge Co.*, 520 U.S. at 555 ("For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."). "Whether [a worker] qualifies as a seaman 'is a mixed question of law and fact.'" *O'Hara*, 294 F.3d at 63-64 (quoting *Harbor Tug & Barge Co.*, 520 U.S. at 554).

The Supreme Court has emphasized that it is important "to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose." *Chandris*, 515 U.S. at 369. "The Jones Act remedy is reserved for sea-based maritime employees

17

whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Id.* at 370 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104 (1946) (Stone, C.J., dissenting)).  The key is whether the individual "'had a sufficient relation to the navigation of vessels and the perils attendant thereon.'" *Id.* (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 435 (5th Cir. 1984)).

## B.     Application

In weighing "the total circumstances" of Volk's employment, we conclude as a matter of law that Volk does not qualify as a seaman under the Jones Act. *See id.*  As a reasonable factfinder could only conclude, his work on the barges did not regularly expose him to the special hazards and disadvantages of the sea. *See id.* at 369-70.

Volk did not "derive[] his livelihood from sea-based activities." *O'Hara*, 294 F.3d at 64 (internal quotation marks omitted).  Volk never operated a barge and only worked aboard the barges when they were secured to the dock. *See Harbor Tug & Barge Co.*, 520 U.S. at 555 ("For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take

18

him to sea."). The barges Volk worked on were moved to the loading dock by Tilcon workboats and Tilcon employees, and transported down the Hudson River by Buchanan tugboats.[8] Volk was not a crew member of and did not serve on the Buchanan tugboats.[9] Indeed, Volk reported to the dock foreman, not a ship's officer, and it was the dock foreman who brought him to the medical clinic after his accident. Volk belonged to a union that represents equipment operators. He did not belong to a maritime union and did not hold a maritime license or other "seaman's papers." *O'Hara*, 294 F.3d at 64. Finally, Volk never spent the night aboard a barge; he worked an hourly shift and went home every night after his shift ended. In contrast, a traditional Jones Act seaman normally

---

[8]     Volk would occasionally ride on the Tilcon workboats from the pier, where he performed his work on the barges, to the loading dock. The distance was "[p]robably" a "couple hundred yards," App'x 1012, and Volk did not perform any inspection or repair work while on the Tilcon workboats. *See Casser v. McAllister Towing & Transp. Co.*, 10 Civ. 1554 (JSR), 2010 WL 5065424, at *3 (S.D.N.Y. Dec. 7, 2010) (rejecting argument that once a person steps onto a vessel he is a seaman because "if this argument were accepted, then there would be no distinction between a longshoreman and a seaman").

[9]     Volk argues for the first time on appeal that he was a crew member of the small pontoon work boat that he used to approach a moored barge from the water side to make repairs to the barge. Even if this argument were not waived, *see Green v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."), it does not change our analysis as the pontoon work boat, like the Buchanan barges, was unmanned, had no crew members, and was only used, on occasion, as a work platform by Volk and his fellow workers.

serves for voyages or tours of duty. *See, e.g.*, *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731-32 (1943) (voyages); *Sellers v. Dixilyn Corp.*, 433 F.2d 446, 447-48 (5th Cir. 1970) (tours of duty).

In *O'Hara*, we concluded that a dock worker who was injured while repairing the Staten Island pier aboard a barge was not a "seaman" as a matter of law because he had, at most, "a transitory or sporadic connection" to the barges "in their capacity as vessels in navigation." 294 F.3d at 64 (emphasis omitted). Key to our holding was that the dock worker (1) belonged to a dock workers union rather than a maritime union, (2) lacked a maritime license, (3) never spent the night aboard a barge, and (4) never operated a barge or assisted in its navigation and only worked aboard the barges when they were fully secured to the pier that the dock worker was employed to repair. *Id.* We emphasized that, although the worker "spent more than half his working hours . . . aboard the barges, . . . he spent all of that time performing tasks related to the repair of the Staten Island pier while the barges were secured to the pier." *Id.* This case is not substantially different from *O'Hara*.

Volk seeks to rely on the Fifth Circuit's decision in *Naquin v. Elevating Boats, LLC*, 744 F.3d 927 (5th Cir. 2014), *cert. denied* 135 S. Ct. 1397 (2015).

20

There, a shipyard worker "spent approximately 70 percent of his total time working aboard" so-called "lift-boats" that "were moored, jacked up or docked in [the] shipyard canal." *Id.* at 930. His duties included "inspecting [the lift-boats] for repairs, cleaning them, painting them, replacing defective or damaged parts, performing engine repairs, going on test runs, securing equipment, and operating the vessels' marine cranes and jack-up legs." *Id.* The worker was occasionally "dispatched . . . to repair a vessel or fill in as a vessel crane operator while the vessel was operating in open water." *Id.* at 931. The Fifth Circuit affirmed the jury verdict in favor of the shipyard worker awarding Jones Act damages, finding that the shipyard worker was exposed to the perils of a maritime work environment such that he was a seaman. *Id.* at 935.

The Fifth Circuit's decision is not controlling on us, and it is in any event distinguishable. The shipyard worker there clearly had a more substantial connection to seafaring vessels than Volk does. For example, the shipyard worker operated "the vessels' marine cranes and jack-up legs" and worked aboard the vessels in open water, even if only "occasionally." *Id.* at 930. Volk did none of these things; Volk worked on barges that were moored, directly or indirectly, to the Tilcon dock and did not operate the Tilcon workboats or

21

Buchanan tugboats that transported the barges. *See Schultz v. Louisiana Dock Co.*, 94 F. Supp. 2d 746, 750 (E.D. La. 2000) ("Plaintiff's duties were limited to inspecting and repairing barges moored at the facility. He did not go to sea or face the perils of the sea in the manner associated with seaman status. Plaintiff ate meals ashore and went home every night. He admitted that with respect to the vessels used to transport him around the facility he did not serve as a deckhand.").

In sum, none of Volk's work was of a seagoing nature. Volk's duties were limited to inspecting and repairing barges that were secured to the dock at the Clinton Point facility. Volk did not go to sea and he was not exposed to the "perils of the sea" in the manner associated with seaman status. *See Denson v. Ingram Barge Co.*, 5:07-cv-00084-R, 2009 WL 1033817, at *3 (W.D. Ky. Apr. 16, 2009) ("The hazards Denson states he faced do not rise to the level of the special hazards and disadvantages faced by seamen; they are hazards that longshoremen commonly encounter. Therefore, Denson was an intended beneficiary of the LHWCA."). Accordingly, considering the total circumstances of Volk's employment, we conclude as a matter of law that Volk does not qualify

22

as a "seaman" within the meaning of the Jones Act, and we affirm the dismissal of his Jones Act claims.

## III. *Other Claims*

Volk also asserted claims under the LHWCA, general maritime law, and New York law against all three appellees: Buchanan, Franz, and Tilcon. The district court dismissed all these claims. We conclude that the district court should have permitted certain of these claims to proceed.

### A. **Buchanan**

The district court correctly dismissed all the remaining claims against Buchanan. Buchanan is Volk's employer and ordinarily would be immune from suit under 33 U.S.C. § 905(a). As bareboat charterer of the Barge, however, Buchanan is a dual capacity employer-vessel owner. *See Reed v. S.S. Yaka*, 373 U.S. 410, 412 (1963) ("It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner."). Therefore, if Buchanan were negligent in its vessel capacity in relation to Volk's injury, Buchanan would be liable under 33 U.S.C. § 905(b) in the same manner as a third party. *Gravatt*, 226 F.3d at 119. The district court ruled that Buchanan was not acting in a capacity as vessel owner in

relation to Volk's injury, and therefore is liable exclusively for Volk's workers' compensation payments under the LHWCA. *See* 33 U.S.C. § 905(a) (stating that employer is liable exclusively for scheduled no-fault compensation). Volk does not challenge that ruling on appeal. Because the statutory, no-fault compensation payments under the LHWCA are Volk's exclusive remedy as to Buchanan, his general maritime law and state law claims against Buchanan were properly dismissed. *See id.*

### B. Franz

As vessel owner, Franz was subject to suit for negligence under the LHWCA. 33 U.S.C. § 905(b). Although the district court correctly noted that Franz was not an employer or bareboat charterer of the Barge and therefore was only responsible for his "turnover duty," *see O'hara*, 294 F.3d at 65, the district court did not properly analyze the LHWCA claims. While he could not be responsible for the presence of excess stone, Franz arguably had a duty, as owner, to address the condition of the Barge before turning it over to Buchanan.

As the district court itself recognized, Volk's negligence claim could have been based on the condition of the vessel, not just the presence of excess stone on the margin deck. *See* Special App'x at 27 ("The alleged negligence which

24

caused W. Volk's injury could plausibly originate from one of two sources. *The first is where the stones reached the margin deck of the B-252 from a barge weeper, which is a drainage hole on the side of a barge.* The second is where the stones could have been overloaded by Tilcon and spilled onto the margin deck." (citation omitted and emphasis added)). On remand, the district court shall consider whether there is a viable claim under § 905(b) of the LHWCA against Franz as owner based on the condition of the vessel. *See Gravatt*, 226 F.3d at 115 ("[T]he employee may sue negligent third parties in tort."); *see also Pellegrino v. A.H. Bull S.S. Co.*, 309 F. Supp. 839, 842 (S.D.N.Y. 1969) ("The shipowner owes an absolute and non-delegable duty to . . . longshoremen properly aboard its vessel to provide a seaworthy ship."). As that statute is the sole basis under which Volk can recover against Franz, 33 U.S.C. § 905(b), the general maritime and state law claims otherwise must be dismissed. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001) (noting that the LHWCA preempts all other claims against a vessel owner).

## C. Tilcon

The district court correctly held that Tilcon, the operator of the rock processing facility, has no LHWCA liability because it did not employ Volk or

25

own the Barge. *See* 33 U.S.C. § 905. The district court also correctly held that the general maritime claims asserted against Tilcon fail because Tilcon is not an owner of the Barge and because Volk is not a seaman. Tilcon had no duty to provide a seaworthy vessel or to provide maintenance and cure because it did not own the Barge. *See Oxley v. City of New York*, 923 F.2d 22, 24-25 (2d Cir. 1991) (noting that a vessel owner has a duty to supply a seaworthy vessel); *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001) ("A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship."). Further, Volk is not entitled to maintenance and cure because he is not a seaman. *See* 1B-IV Benedict on Admiralty § 44 (2015) ("Longshoremen, of course, have never been entitled to maintenance and cure.").

The district court erred, however, in dismissing Volk's New York state law claims against Tilcon for negligence, gross negligence, and violations of N.Y. Labor Law § 200. The district court determined that these claims failed because the alleged hazard -- the presence of excess stone on the margin deck of the Barge -- was open and obvious. The district court's holding in this regard was based on an error of law. New York law utilizes a comparative negligence

26

scheme, meaning the doctrines of contributory negligence and assumption of risk are not complete defenses as a matter of law. *See Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 300 (2d Cir. 1997) ("[W]hen New York, by statute, adopted comparative negligence, it abolished not only contributory negligence as a complete defense, but also assumption of risk. Under the statute, liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct." (citing N.Y. C.P.L.R. § 1411)); *see also Payne v. United States*, 359 F.3d 132, 138 (2d Cir. 2004) ("[U]nder New York law the open and obvious nature of a dangerous condition . . . does not absolve the landowner of its general duty of care."). Even assuming the condition was open and obvious, a factual question exists as to the relative fault of the parties.

Accordingly, the district court's grant of summary judgment to Tilcon on these state law claims was error.

### *CONCLUSION*

To summarize, we conclude as follows:

1.     The district court correctly dismissed: (a) the Jones Act claims against all three appellees; (b) the LHWCA, general maritime law, and state law

27

claims against Buchanan; and (c) the LHWCA and general maritime claims against Tilcon; and

2. The district court erred in dismissing: (a) the LHWCA claim against Franz to the extent it is based on the alleged breach of Franz's duty, as owner, to turn over a reasonably safe vessel; and (b) the state law claims against Tilcon for negligence, gross negligence, and violation of N.Y. Labor Law § 200.

Accordingly, the case is **AFFIRMED IN PART, VACATED IN PART,** and **REMANDED** for such further proceedings as may be appropriate.