# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2020

Lyle W. Cayce
Clerk

No. 19-20506

Gilbert Sanchez,

*Plaintiff—Appellant*,

*versus*

Smart Fabricators of Texas, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-00110

Before Davis, Jones, and Willett, *Circuit Judges*.
W. Eugene Davis, *Circuit Judge*:

Plaintiff Gilbert Sanchez appeals the district court's denial of his motion to remand and grant of summary judgment in favor of Defendant Smart Fabricators of Texas ("SmartFab"). Both rulings rested on the district court's holding that Sanchez did not qualify as a seaman under the Jones Act. Concluding that Sanchez is a seaman, we REVERSE and REMAND WITH INSTRUCTIONS to remand the matter to state court.

No. 19-20506

## I. BACKGROUND

Sanchez, a welder hired by SmartFab, was injured when he tripped on a pipe welded to the deck of a jack-up drilling rig. The rig was owned and operated by Enterprise Offshore Drilling LLC ("Enterprise").

Sanchez worked for SmartFab as a welder for 67 days. Of those 67 days, Sanchez worked two jobs that do not count in the seaman calculus: two days (3% of his total employment) in SmartFab's onshore shop, and four days (6% of his total employment) on the ENSCO 75, a vessel not owned by Enterprise or part of its fleet. He spent the remaining days—those pertinent to our calculus—on Enterprise's jack-up drilling rigs. Sanchez worked 48 of those days (72% of his total employment) on the ENTERPRISE WFD 350, a rig adjacent to an inland pier, and 13 of those days (19% of his total employment) on the ENTERPRISE 263, a rig on the Outer Continental Shelf.

Although Sanchez's injury occurred on the ENTERPRISE 263, the vast majority of his time with SmartFab was spent on the ENTERPRISE WFD 350. Thus, it becomes critical whether his work aboard that rig was substantial in terms of both its duration and nature. For all 48 days he spent on the ENTERPRISE WFD 350, the rig was jacked up above water, a step away from and adjacent to the shoreside pier. Sanchez only worked day shifts, returning home every evening.

After his accident, Sanchez sued SmartFab in state court under the Jones Act. SmartFab removed the case, but Sanchez argued that the Jones Act precluded removal. The district court denied Sanchez's motion to remand and granted SmartFab's motion for summary judgment, each for the

2

same reason: Sanchez could not qualify as a Jones Act seaman.[1] Sanchez timely appealed both orders.

## II. DISCUSSION

We review both the denial of a motion to remand and the grant of summary judgment de novo.[2]

The Jones Act grants "any seaman" a cause of action in negligence against the vessel owner, master, or fellow crewmembers.[3] Only seamen may sue under the Jones Act. Generally, Jones Act claims are "not subject to removal to federal court."[4] Sanchez argues that because he was a seaman who brought his negligence claim under the Jones Act in state court, the district court erred in granting summary judgment for SmartFab and denying his motion to remand. So, the only issue for us to decide on appeal is whether Sanchez is a Jones Act seaman. If he is, the district court must be reversed and the case remanded.

Congress has not defined the term "seaman," and the "difficult . . . task of giving a cogent meaning to [the] term has been left to the courts."[5] We are guided by the Supreme Court's two-prong test, set forth in *Chandris, Inc. v. Latsis*:[6] (1) the employee's duties "must contribute to the function of

---

[1] *See Sanchez v. Enter. Offshore Drilling LLC*, No. CV H-19-110, 2019 WL 2515307, at *4 (S.D. Tex. June 18, 2019); *Sanchez v. Enter. Offshore Drilling LLC*, 376 F. Supp. 3d 726, 733 (S.D. Tex. 2019);

[2] *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115 (2013).

[3] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995); 46 U.S.C. § 30104.

[4] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001).

[5] *In re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000) (per curiam).

[6] 515 U.S. 347, 368 (1995).

the vessel or to the accomplishment of its mission,"[7] and (2) the employee "must have a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[8] The parties agree that Sanchez meets the first prong—he was "doing the ship's work" as a welder and fitter. But SmartFab argues, and the district court found, that Sanchez fails the second.

The Court's substantial-connection prong was designed "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation."[9] The Court has explained that "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon."[10]

To make this determination, *Chandris* instructs us to address both the quantity (duration) and quality (nature) of the worker's duties aboard a vessel during his employment with his current employer. As to duration, the Court held in *Chandris* that, as a rule of thumb, a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[11] And as to nature, the Court emphasized that we focus on the nature of the claimant's connection with the vessel.[12] The Court then reiterated in *Harbor Tug & Barge Co. v. Papai* that

---

[7] *Id.* This threshold requirement is "very broad." *Id.*

[8] *Id.*

[9] *Id.* at 368.

[10] *Id.* at 370.

[11] *Id.* at 371.

[12] *Id.* at 370.

the Jones Act should only extend to "those workers who face regular exposure to the perils of the sea."[13] It explained, "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."[14]

The district court held, and we agree, that Sanchez satisfies the duration requirement of the *Chandris* test.[15] Indeed, he spent over 70% of his employment with SmartFab aboard the ENTERPRISE WFD 350, and around 19% of his employment aboard the ENTERPRISE 263, two jack-up drilling rigs owned by Enterprise Offshore Drilling.[16] The question of whether he qualifies as a seaman thus narrows to whether the circumstances of his employment meet the nature test.

---

[13] 520 U.S. 548, 560 (1997).

[14] *Id.* at 555. Papai engaged in maintenance—chipping rust and painting—aboard the docked vessels. *Id.* at 551. The court observed that his actual duty "did not include any seagoing activity; he was hired for one day to paint the vessel at dockside and he was not going to sail with the vessel after he finished painting it." *Id.* at 559. The court ultimately held that Papai did not establish seaman status under the group of vessels concept (i.e., the fleet doctrine). *Id.* at 560.

[15] *Sanchez v. Enter. Offshore Drilling LLC*, 376 F. Supp. 3d 726, 732 (S.D. Tex. 2019).

[16] On appeal, SmartFab argues that we may only look at Sanchez's time spent on vessels on the Outer Continental Shelf. This is wrong. "[J]ack-up drilling platforms . . . are considered vessels under maritime law." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013), SmartFab has made no showing that the docked jack-up drilling rigs had lost their vessel status, either because they were "withdrawn from the water for extended periods," *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 300 (5th Cir. 2008), or "being transformed through 'major overhauls or renovations,'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 374 (1995) (citation omitted). Thus, the district court did not err in considering Sanchez's time aboard the ENTERPRISE WFD 350.

The district court answered that question in the negative and concluded that Sanchez was a shoreside worker.[17] The court observed that his work on vessels—primarily the work he completed on ENTERPRISE WFD 350—did not expose him to the perils of the sea, and the court therefore concluded that Sanchez was not a seaman.[18]

Our case law rejects such a narrow reading of the substantial-in-nature requirement. In *In re Endeavor Marine*, the plaintiff, a crane operator, worked on a moored derrick barge on the Mississippi River, where he loaded and unloaded cargo and helped to maintain the crane.[19] He was rarely required to board a moving vessel, and he never traveled beyond the immediate dock area.[20] The district court held that because his duties did not "take him to sea," as *Papai* required, he did not qualify as a seaman.[21] We disagreed.[22] We held the plaintiff's connection to the vessel was substantial in nature, because his connection to the barge regularly exposed him to the perils of the sea—namely, being "on the brown waters of the Mississippi River"—regardless of whether he actually went to sea.[23]

---

[17] *Sanchez*, 376 F. Supp. 3d 726, 732–733.

[18] *Id.*

[19] 234 F.3d 287, 298 (5th Cir. 2000) (per curiam); *see also In re Complaint of Endeavor Marine, Inc.*, No. CIV.A. 98-0779, 1999 WL 76586, at *1 (E.D. La. Feb. 11, 1999).

[20] *Endeavor Marine*, 234 F.3d at 289.

[21] *Id.* at 291.

[22] *Id.*

[23] *Id.* at 291–92, 292 n.3.

We followed *Endeavor Marine* fourteen years later in *Naquin v. Elevating Boats, L.L.C.*[24] There, the plaintiff, a vessel repair supervisor, was injured in a shipyard while working on a fleet of liftboats.[25] The liftboats he worked on were either moored, jacked up, or docked in the shipyard canal.[26] We rejected the argument that the work upon those vessels did not expose the plaintiff to the perils of the sea, even if the vessels were docked in a canal and rarely ventured beyond.[27] Finding "no basis to distinguish *Endeavor Marine*," we held that working on a vessel docked or at anchor in navigable water satisfied the substantial in nature requirement.[28]

The nature of Sanchez's employment cannot be distinguished from that of plaintiffs' in *Endeavor Marine* and *Naquin*. First, *Endeavor Marine* makes clear that Sanchez can qualify as a Jones Act seaman so long as he is exposed to the perils of the sea, even if his duties are on a vessel jacked up next to a dockside pier.[29] Second, *Naquin* establishes that Sanchez can qualify as a seaman if he was "doing [a] ship's work on vessels docked or at anchor in navigable water."[30] This is true regardless of whether Sanchez was welding or operating marine cranes like the plaintiff in *Naquin*. "While . . . near-shore workers may face fewer risks, they still remain exposed to the

---

[24] 744 F.3d 927 (5th Cir. 2014).

[25] *Id.* at 930.

[26] *Id.*

[27] *Id.* at 934–35.

[28] *Id.* at 935. *See also Grab v. Boh Bros. Const. Co.*, 506 F. App'x 271, 276 (5th Cir. 2013) (unpublished) (ironworker foreman on stationary crane barge on Lake Ponchartrain was exposed to perils of the sea).

[29] *In re Endeavor Marine Inc.*, 234 F.3d 287, 292 (5th Cir. 2000) (per curiam).

[30] *Naquin*, 744 F.3d 927, 935 (5th Cir. 2014).

perils of a maritime work environment."[31] The district court underscored that the drilling rigs on which Sanchez worked were jacked up above the water, but the same was true for some of the liftboats in *Naquin*.[32] And, while the court emphasized that Sanchez was a land-based welder who went home every evening, we held in *Naquin* that such work aboard vessels was not disqualifying.[33] The cases are indistinguishable.

Sanchez has therefore shown that he had a substantial connection both in nature and duration to the vessels on which he worked. The district court erred in holding that Sanchez was not a Jones Act seaman.

## III. CONCLUSION

We REVERSE the district court's judgment and REMAND WITH INSTRUCTIONS to remand the matter to the 165th Judicial District Court of Harris County, Texas.

---

[31] *Id.* at 934.

[32] *Id.* The other liftboats were moored or docked. *Id.*

[33] *Id.* at 934. *See also Grab v. Boh Bros. Constr. Co., L.L.C.,* 506 Fed. App'x. 271, 276 (5th Cir. 2013) (unpublished) ("[T]he fact that [the injured employee] returned home daily did not remove him from his exposure to cognizable dangers of the sea.").

No. 19-20506

W. EUGENE DAVIS, *Circuit Judge*, specially concurring in the judgment, joined by JONES and WILLET, *Circuit Judges*:

Although this panel is bound by our precedent, for reasons discussed below, I am persuaded that our case law is inconsistent with the teaching of the Supreme Court. It is clear to me that Sanchez was a land-based fitter and welder whose duties did not take him to sea; consequently, he does not qualify as a seaman.

## I.

The undisputed facts of this case are outlined in the majority opinion. Basically, Sanchez was a welder and fitter, who worked on jobs where his employer sent him to satisfy customer orders. He was land-based, lived at home, and traveled to and from work every day. During the 48 days he worked on the ENTERPRISE WFD 350, the barge was jacked up adjacent to and one step away from the dock. While he performed welding repair services on the barge, it was never jacked down into the water or moved away from the dock.

Three Supreme Court cases are important to our analysis of whether Sanchez was a seaman. The first is *McDermott International, Inc. v. Wilander*.[1] Most relevant to today's case, the Court emphasized that maritime workers are covered under two acts—the Longshore and Harbor Workers' Compensation Act and the Jones Act—and that coverage under the two acts is mutually exclusive.[2] As such, the Court underscored the important distinction between land-based and sea-based maritime workers.[3] Only

---

[1] 498 U.S. 337 (1991).

[2] *Id.* at 347.

[3] *Id.*

"[t]he latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen."[4] The Court went on to define seamen as workers who "contribute to the function of the vessel" or are "employed on board a vessel in furtherance of its purpose."[5]

The Court further developed the relationship a worker must have to a vessel in order to be a seaman four years later in *Chandris, Inc. v. Latsis*.[6] The Court held that "the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[7] The Court required that a seaman have a substantial connection to a vessel that is substantial in terms of both its duration and nature.[8]

While the Court did not expand on the "nature" element in *Chandris*, it did provide some important details to the requirement in *Harbor Tug & Barge Co. v. Papai*.[9] The plaintiff in *Papai* was land-based and worked on a group of tugs owned by three tugboat operators in the San Francisco Bay, where he did maintenance, longshoring, and deckhand work.[10] He was injured while doing painting work on one of the defendant's tugs, the *Pt. Barrow*.[11] The Court first held that the plaintiff failed to establish seaman

---

[4] *Id.*

[5] *Id.* at 346, 355 (cleaned up).

[6] 515 U.S. 347 (1995).

[7] *Id.* at 370.

[8] *Id.* at 376.

[9] 520 U.S. 548 (1997).

[10] *Id.* at 551.

[11] *Id.*

status under the "fleet doctrine."[12] The Court also held that the plaintiff's work was not substantial in nature.[13] It stressed: "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties *take him to sea*."[14] Such an inquiry, the Court explained, is "helpful in distinguishing land-based from sea-based employees."[15] The Court then noted that the plaintiff's "actual duty on the *Pt. Barrow* throughout the employment in question did not include any seagoing activity; he was hired for one day to paint the vessel at dockside and he was not going to sail with the vessel after he finished painting it."[16] The Court concluded no percentage of his work "subject[ed] him to the perils of the sea."[17]

## II.

Moving to the instant case, I am persuaded that our precedent has failed to apply the above Supreme Court authority correctly.

---

[12] *Id.* at 559–60. The Court rejected Papai's argument that the group of tugs operating in the San Francisco Bay Area served by Papai's union was an identifiable group of vessels to which he had a substantial connection. *Id.* The Court explained that a worker could have a connection to a fleet of vessels only if those vessels are under common ownership and control. *Id.*

[13] *Id.* at 559.

[14] *Id.* at 555 (emphasis added).

[15] *Id.*

[16] *Id.* at 559.

[17] *Id.* at 560. For an excellent discussion on the difficulties distinguishing between land-based and sea-based employment, see Kenneth Engerrand's article, *Escape from the Labyrinth: Call for the Admiralty Judges of the Supreme Court to Reconsider Seaman Status*, 40 HOUS. J. INT'L L. 741, 779 (2018). *See also* Robert Force and Martin J. Norris, 1 THE LAW OF SEAMEN § 2:5–8 (5th ed. 2019) (for a comprehensive discussion of the cases on the subject).

As the panel discusses, in *In re Endeavor Marine Inc.*, the plaintiff worked as a crane operator unloading barges at a dock on the Mississippi River.[18] He also performed routine maintenance work on the same barge.[19] The plaintiff was land-based, and his duties did not take him to sea or even out on the waters of the Mississippi River.[20]

In *Naquin v. Elevating Boats, L.L.C.*, we relied on *Endeavor Marine* and held that plaintiff satisfied the nature element of the substantial connection requirement.[21] Our reliance was misplaced. The land-based plaintiff worked on dockside vessels and in a canal adjacent to the shipyard—his duties did not take him to sea or expose him to its perils.[22]

Applying the aforementioned Supreme Court caselaw, I agree that because Sanchez spent more than 70% of his employment time with SmartFab aboard the ENTERPRISE WFD 350, he satisfied the duration prong of the substantial connection requirement. Yet, as discussed above, I am persuaded that we did not correctly follow the Court's dictates in holding that Sanchez satisfied the nature element of the substantial connection requirement. All of his welding work on the ENTERPRISE WFD 350 was done while the rig was jacked up adjacent to the dock. He was never assigned to sail on the vessel, and instead only had to take two steps off the rig and onto land every evening at the end of his shift. His work was essentially land-

---

[18] 234 F.3d 287, 289 (5th Cir. 2000) (per curiam).

[19] *Id.* at 289, 293.

[20] *Id.* at 292 n.3

[21] *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 935 (5th Cir. 2014).

[22] *Id.* at 930–31. *See also id.* at 943 (Jones, J., dissenting) (arguing that the plaintiff was not exposed to the perils of the sea because he "spent nearly all of his time dockside, repairing boats that were secured in the shipyard canal, or operating a land-based crane, or working in the shipyard fabrication shop").

based, never exposing him to the perils of the sea. I believe that we should take this case en banc and bring our jurisprudence in line with Supreme Court caselaw.[23]

---

[23] This would also be consistent with the Second Circuit's approach in *Matter of Buchanan Marine, L.P.*, 874 F.3d 356 (2d Cir. 2017). The plaintiff in that case worked on the Hudson River as a barge maintainer. *Id.* at 361. The court determined that the plaintiff's work on the barges did not regularly expose him to the perils of the sea, because the barges were always moored in the Hudson. *Id.* at 367. Although the Second Circuit distinguished *Naquin*, its distinction is suspect—under our case law, the plaintiff there would most certainly satisfy the nature element of the substantial connection requirement.